49. However, rather than terminate or meaningfully discipline Sousa, Defendants Kruk and Murphy have protected and defended his conduct.

**COUNT ONE: DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201 (AS TO ALL DEFENDANTS)**

50. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 49 as though restated entirely in this paragraph 50.

51. There is an actual controversy between the Plaintiff and Defendants concerning the existence, nature, scope and severity of racial discrimination, intimidation and retaliation perpetrated and condoned by the Defendants.

52. The Plaintiff is entitled to a declaration of her rights and remedies.

**COUNT TWO: TITLE VII CLAIMS (AGAINST DEFENDANT LANTZ IN HER OFFICIAL CAPACITY ONLY AND STATE DEFENDANT AS "EMPLOYER")**

53. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 49 as though restated entirely in this paragraph 53.

54. By virtue of its conduct described herein, the State Defendant, acting as "Employer" for purposes of Title VII and by and through Defendant Lantz acting in her official capacity as agent of such Employer, has violated the Plaintiff's right to equal employment opportunity in at least the following particular ways:

   a. They have engaged in discriminatory employment practices;

   b. They have participated in the creation of a hostile work environment; and

   c. They have engaged in retaliatory conduct;

All in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act amendments of 1991, at 42 U.S.C. §§ 2000e *et seq.*

15

55.     Plaintiff has been and continues to be harmed by such wrongful acts.

**COUNT THREE:    DEPRIVATION OF RIGHT TO EQUAL ENJOYMENT OF BENEFITS, PRIVILEGES, TERMS AND CONDITIONS OF EMPLOYMENT AS PROTECTED BY 42 U.S.C. § 1981 AND REMEDIABLE UNDER 42 U.S.C. § 1983 (AS TO INDIVIDUAL DEFENDANTS KRUK, MURPHY AND SOUSA ACTING IN THEIR PERSONAL CAPACITY FOR THE PURPOSE OF DAMAGE CLAIMS AND ACTING IN THEIR OFFICIAL CAPACITY FOR THE PURPOSE OF INJUNCTIVE RELIEF)**

56.     Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 49 as though restated entirely in this paragraph 56.

57.     Except as otherwise stated herein, the Individual Defendants Kruk, Murphy and Sousa were acting in the course and scope of their employment.

58.     At all times mentioned herein, such Individual Defendants were acting under color of state law.

59.     Defendant Sousa was directly and personally involved as the initiator of such violations.

60.     Individual Defendants Kruk and Murphy knew or had reason to know that Sousa violated the rights of the Plaintiff.

61.     Individual Defendants Kruk and Murphy knew or had reason to know that Sousa's treatment of the Plaintiff, including racial discrimination and retaliation alleged herein, were sufficiently severe, pervasive and extensive to render the work environment hostile to the Plaintiff.

62.     Individual Defendants Kruk and Murphy could have taken action to investigate, address, prevent and punish the violations of the Plaintiff's rights, but they knowingly and deliberately failed or refused to do so.

16

63. By their acts and omissions, Individual Defendants Sousa, Kruk and Murphy knowingly and intentionally perpetrated or disregarded repeated, pervasive and ongoing violations of the Plaintiff's rights, and knowingly and intentionally failed to protect the Plaintiff from harm, thus subjecting the Plaintiff to violation of her § 1981 rights to equal benefits, privileges, terms and conditions of employment.

64. Such Individual Defendants were personally involved in and responsible for the violation of the Plaintiff's statutory right to the benefits, privileges, terms and conditions of employment in that:

    a. They participated directly or indirectly in such violations;

    b. After being informed of the violations, they failed to remedy the wrongs;

    c. They created policies, practices and customs, and they allowed the continuance of policies, practices and customs, under which such practices occurred;

    d. They were grossly negligent and deliberately indifferent in supervising, training and disciplining subordinates who committed the wrongful acts described herein;

    e. They exhibited deliberate indifference to the Plaintiff by failing to act on information indicating that such wrongful acts were occurring; and

    f. They acted with reckless or callous indifference to the Plaintiff's human dignity and statutory rights.

65. As a direct and proximate result of the acts and omissions of such Individual Defendants, the Plaintiff has suffered physical and emotional pain and suffering, mental anguish, humiliation, distress, fear, embarrassment, inconvenience, nervousness, feelings of exhaustion,

loss of enjoyment of life, adverse effects on her relationships with others and other mental, physical and emotional injuries.

    66.    As a further direct and proximate result of the acts and omissions of such Individual Defendants, the Plaintiff suffered financial and other injuries, including reduced compensation during extended medical leave, forced use of sick time, forced use of vacation time, lost work opportunities, and the costs of medical treatment and counseling.

**COUNT FOUR: STATE COMMON LAW TORT OF FALSE IMPRISONMENT (AS TO DEFENDANT SOUSA ONLY)**

    67.    Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 49 as though restated entirely in this paragraph 67.

    68.    By his conduct on the night of March 8, 2001 and into the morning of March 9, 2001, Defendant Sousa, acting individually, committed the tort of false imprisonment against the Plaintiff when, despite her legitimate request for medical relief, and knowing the serious consequences she could face for leaving her post without relief from another officer, intentionally, wantonly, recklessly and maliciously delayed and prevented such relief, with the purpose of imposing a confinement against her will.

    69.    Plaintiff has suffered grievous physical, emotional, psychological and financial harms as the proximate and foreseeable consequence of these actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For an order declaring that the Defendants' acts and omissions described herein constitute prohibited racial discrimination and retaliation, and violate the Plaintiff's statutory rights to equal employment opportunity provided by Title VII of the Civil Rights Act of 1964, as amended, and by 42 U.S.C. §§ 1981 and 1983;

2. For temporary, preliminary and permanent injunctions enjoining the Defendants in their official capacities, their successors, agents, employees and all persons working in concert or participation with them, from continuing to discriminate and retaliate against the Plaintiff and from continuing to violate the Plaintiffs' statutory rights to equal employment opportunity;

3. For temporary, preliminary and permanent injunctions enjoining the Defendants in their official capacities, their successors, agents, employees and all persons working in concert or participation with them, to immediately take all steps necessary to prevent and remedy racial discrimination, intimidation and retaliation committed by themselves and/or by any and all employees of the DOC including, but not limited to:

   a. An injunction compelling the Defendants immediately to create, publicize and enforce a meaningful anti-discrimination policy that is clear and comprehensive enough to give guidance to all employees, supervisors and managers of what is expected of them in the workplace. Among other things, the policy should contain: a statement that offenders "shall" be held accountable for acts of employment discrimination and disciplined appropriately; a statement that supervisors and managers "shall" be held

19

accountable for stopping and reporting discriminatory practices; a statement that appropriate disciplinary action "shall" be taken against supervisors and managers who fail to enforce the policy; a statement that acts of retaliation against persons who report discrimination are themselves separate violations of discrimination law which "shall" be considered as additional acts of misconduct and investigated and disciplined accordingly; a definition and examples of behaviors that can be easily comprehended; a description of the level of discipline that "shall" be imposed for violations of the policy; the process of reporting complaints, with an emphasis on the multiple places for filing complaints, such as any DOC supervisor, the Commissioner, applicable law enforcement agencies, the CHRO and the EEOC; mandatory timelines for investigating and resolving complaints of discrimination; a statement that complainants "shall" be notified of their rights, applicable statutes of limitations and filing deadlines; and the names and telephone numbers of persons to contact if employees have questions about the policy;

  b. An injunction compelling the Defendants immediately to post prominently and distribute widely the anti-discrimination policy so that all employees are aware of the prohibition and the procedures for complaining about it. A real and truthful zero tolerance statement from the DOC should accompany the policy, as well as a statement from the Commissioner that he and the other Defendants are under a court order to meaningfully enforce the policy in every respect and that they can and should be reported for their failure to do so. Each employee of the DOC should be given a copy of the policy and should sign a statement that they have read it and understand its contents. This statement shall be used later if officers or supervisors accused of violating the policy

claim to not have known that their behavior was illegal. All DOC employees should be compelled to read and sign the policy every year during the performance evaluation process;

  c. An injunction compelling the Defendants immediately to establish, publicize and enforce appropriate and mandatory discipline requirements, up to and including dismissal, for all persons found to have committed discrimination, harassment, retaliation or intimidation;

  d. An injunction compelling the Defendants immediately to establish, publicize and enforce a comprehensive and mandatory anti-retaliation policy, the breach of which shall subject offenders to discipline equal to or greater than the discipline required for direct acts of racial discrimination. The policy shall be clear and comprehensive enough to give guidance to all employees, supervisors and managers of what is expected of them in the workplace. Among other things, the policy should contain: a statement that offenders "shall" be held accountable for acts of retaliation and disciplined appropriately; a statement that supervisors and managers "shall" be held accountable for stopping and reporting retaliation; a statement that appropriate disciplinary action "will" be taken against supervisors and managers who fail to enforce the policy; and a definition and examples of retaliatory behaviors that can be easily comprehended;

  e. An injunction compelling the Defendants' immediately to establish, publicize and enforce rules and policies that will ensure the immediate and meaningful protection of discrimination victims upon the making of a discrimination complaint. At a

21

minimum, such rules and policies shall mandate that, upon such a complaint, and until the complaint has been finally resolved, the alleged victim shall not be forced to continue to work in the same facility as the alleged discriminatory actor, and that, unless the victim agrees voluntarily to take a temporary paid administrative leave, the alleged discriminatory actor shall be transferred to a post where he shall have no contact with the complainant or shall him or herself be placed on administrative leave; and

  f. An injunction compelling the Defendants to collect, compile and evaluate accurate and comprehensive records and data concerning all incidents of discrimination and retaliation at the DOC, including names of complainants, names of discriminatory actors, names of supervisors, locations, types of behavior, time to investigate, results of investigations, and discipline or remedies imposed;

  4. For actual, compensatory and punitive damages according to proof from the State Defendant, to the extent provided by the 1991 amendments to Title VII;

  5. For compensatory damages according to proof from the Individual Defendants in their personal capacities for the violation of rights protected by § 1981, to the extent provided by § 1983;

  6. For such compensatory and punitive damages from the Individual Defendant Sousa as are available under the provisions of the laws of the State of Connecticut;

  7. For costs and reasonable attorneys fees; and

  8. For such further relief as the Court deems just and proper.

## AMOUNT IN DEMAND

Plaintiff's amount in demand, subject to proof in this case and in addition to equitable relief stated herein, is $1,000,000.00.

## JURY DEMAND

Plaintiff respectfully requests that this case be tried to a jury.

Dated (as amended): January 2, 2004

                      FOR THE PLAINTIFF
                      BRENDA J. LEWIS

                      _____
                      Lowell L. Peterson
                      Community Law Practice, LLC
                      2065-A Main Street
                      Hartford, CT 06120
                      (Tel.) 860-728-3788
                      (Fax) 860-728-3755
                      lpeterson@clpllc.com
                      Federal Bar # ct-22165