UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRENDA LEWIS,	:	CASE NO. 3:02CV2304(MRK)
*Plaintiff,*	:
	:
v.	:
	:
STATE OF CONNECTICUT,	:
DEPARTMENT OF CORRECTION, ET AL.	:
*Defendants*	:	September 21, 2004

**DEFENDANTS' REPLY BRIEF**

**I. Plaintiff Fails To Satisfy Rule 56(a)(2 and (3).**

The plaintiff has failed to satisfy Rule 56(a)(2) and (3) in that (a) she has not admitted or denied each of the defendants' numbered statements of undisputed material facts, and (b) in that each disputed statement is not followed by a specific citation to the record as required by Rule 56(a)(3). Instead, the plaintiff has responded to defendants' numbered statement of undisputed material facts by admitting some, claiming insufficient knowledge to respond as to others, and disagreeing with still others without supporting citation.[1] As the rule requires the plaintiff to admit or deny, the plaintiff is not permitted to answer as if it were a complaint with discovery to follow. Discovery is completed in this case. Therefore, all of plaintiff's responses of insufficient knowledge should be deemed "admitted." Rule 56(a)(2) states: "All material facts set forth in said statement will be *deemed admitted unless controverted by the statement required to be filed* and served by the opposing party *in accordance with Local rule 56(a)(2).*" Emphasis added. Rule 56(a)(3) goes on to state: "failure to provide specific citations to evidence in the

---

[1] In addition, in other instances, the plaintiff responds to defendants' facts by adding to them. Such a response is also not contemplated by Rule 56(a).

record as required by this Local Rule may result in…when the opponent fails to comply, an order granting the motion." Indeed, many courts have deemed the moving party's facts "admitted" and granted summary judgment where a plaintiff fails to comply with Local Rule 56. E.g., Gaunichaux v. DCF, U.S.D.C. New Haven, 3:00cv00392(EBB) (D.Conn. 2002) and citations therein (attached hereto).

Furthermore, it is established law that a plaintiff may not rely on mere allegations or denials contained in his pleadings or mere speculation or conjecture to overcome a motion for summary judgment. St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000); Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999) (statements devoid of specifics, but replete with conclusions are insufficient); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (evidence that is merely colorable or not significantly probative insufficient); Goenaga v. March of dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (conjecture, surmise, and speculative assertions held insufficient); Lipton v. The Nature Co., 71 F.3d 464, 469 (2d Cir. 1995). In addition, a plaintiff cannot rely on non-specific conclusory allegations. Jing Ying Gan v. City of New York, 996 F2d 522, 532 (2d Cir. 1993) (party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible); Manessis v. N.Y. City Dept. of Transportation, et al., 2003 U.S. Dist. LEXIS 1921 *8-9 (S.D.N.Y. 2003) (mere allegations or denials, statements devoid of specifics, but replete with conclusions are insufficient) (internal citations omitted). Inadmissible hearsay also cannot create a material issue of fact to defeat summary judgment. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999); Manessis, 2003 U.S. Dist. LEXIS 1921 *44.

2

For the above reasons, the defendants respectfully request that the court deem the defendants' statement of material facts as admitted and in rule in their favor.

## II. There Are No Genuine Issues Of Material Fact In Dispute With Regard To The Essential Elements of Plaintiff's Claims.

### A. The Plaintiff's 23 Paragraphs Fail To Create Disputed Issues of Material Fact.

The plaintiff has also failed in her attempt to create genuine issues of material fact in her 23 paragraphs labeled "Disputed Issues of Material Fact." Some of them clearly state only legal issues in question form, not factual ones. Others do not establish material issues of fact in dispute, but rather only factual discrepancies inconsequential to the case as a matter of law. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F. 3d 456, 466 (2d Cir. 2001).

With regard to plaintiff's Disputed Issues # 1 and 6 (Body Alarms/Codes) –

(#1) Whether Hartford CC actually had a policy to prohibit or discourage the use of emergency codes for staff emergency relief, is not material to this case, as such a statement would not help establish whether or not Lt. Sousa intentionally delayed medical treatment because the plaintiff was African American. The defendants are not claiming that Lt. Sousa did not provide immediate relief because the plaintiff did not use an emergency code. Furthermore, Plaintiff's representative, the union, in bringing the labor grievance relating to the delay in providing relief, admitted that the delay was not

3

intentional. See Defendant's Rule 56(a)(1) Fact # 37 and Plaintiff's response thereto; Millholen Affidavit ¶ 6. The defendants mentioned the emergency relief options only to demonstrate that the plaintiff could have facilitated a faster response if she had been aware of the seriousness of her own medical condition, which she nor others were. Since plaintiff has admitted that even she was not aware that she was experiencing a medical emergency, it does not really matter whether or not Hartford had a policy to discourage the use of emergency codes for staff emergencies. Defendants' Rule 56(a)(1) Fact # 48 citing to Lewis Deposition, p. 17. 18:1. Plaintiff did not use an emergency code because she did not know she was in an emergency situation, not because she felt she shouldn't. In any event, she has not established that such an alleged policy to discourage emergency codes in emergency situations existed and assuming arguendo that she did that, she has failed to establish that such a policy is applied only as to African Americans. She has not cited to any record evidence to contradict the appropriate use of certain codes or alarms by other DOC staff to seek assistance for staff medical emergencies in accordance with clear administrative directives. Def.'s Rule 56(a)(1), Exh. 2, Murphy's Aff. ¶ 13, ¶ 14.

(#6) The plaintiff fails to offer any evidence that any non-minority officer or supervisor was granted immediate relief by Lt. Sousa, the person she claims to have intentionally delayed her relief due to her race, (or by even anyone) without sounding an alarm or code. Therefore, she cannot establish even an inference of race discrimination related to the delay. Shumway v. UPS, 118 F.3d 60 (2d Cir. 1997); Taylor, infra, p. 18. With regard to plaintiff's Disputed Issues ## 2, 5 and 11 (Delay on 3/9/01) -

(#2) Whether or not Lt. Sousa instructed Officer Hebert to perform additional time-consuming tasks before reporting to relieve plaintiff does not raise a genuine issue

4

of material fact in dispute because viewed objectively and subjectively, neither Lt. Sousa, C/O Morelli or C/O Lewis knew the seriousness of plaintiff's medical condition to make such alleged instruction constitute an inference of racial discrimination or pretext for race discrimination. C/O Lewis did not even characterize the delay as racially motivated until almost 9 months later when she filed the CHRO claim on Nov. 30, 2001. See Defendants' Rule 56(a)(1) # 68, # 80 and Exh. 2, Murphy's Aff. ¶ 4; Plaintiff's Rule 56(a)(2) # 68, # 80.

(#5) Plaintiff puts forward only a question of law, not fact, regarding whether a hostile work environment exists. Furthermore, she premises her legal question on the speculative "if evidence demonstrates." Speculation and conjecture are inadequate bases to overcome summary judgment. See citations, supra p. 2.

(#11) Again, Plaintiff raises a question of law (not fact) of whether Lt. Sousa is culpable for failing to deliver prompt relief based on information plaintiff relayed. Not only had the plaintiff not relayed the seriousness of her condition to Lt. Sousa, Lt. Dorozko or Morelli, but furthermore, the plaintiff has not articulated any fact establishing that the Lieutenants had not forwarded her request for relief immediately or that Lt. Sousa failed to deliver prompt relief because of her race.

With regard to plaintiff's Disputed Issues # 12, 13, and 21 (Other 3/9/01 issues) –

(#12) It is not material whether there were two or three calls. Nor is it material the exact time of the calls. The parties are in agreement that a delay of just less than an hour occurred (approximately between 12:04 and 1:00 a.m.) and that both Lieutenants received one or more calls during the delay.

(#3) The exact wording of plaintiff's request for relief to Lt. Sousa is immaterial in light of her admission that she did not realize the seriousness of her condition and, thus, did not convey that information to C/O Morelli, who was present with her while she waited for relief, or to Lt. Dorozko. Defendants' Rule 56(a) Fact # 24 on p. 11,[2] and fact # 41. Regardless of the knowledge of the seriousness of the situation, Lt. Sousa promptly directed Center Control to provide relief. Rule 56(a)(1) Exh. 2, Sousa Affidavit, ¶ 7.

(#21) There is no conspiracy charge alleged in this case, and therefore, this paragraph presents no genuine issue of material fact in dispute as to whether agency personnel entertained a "calculated strategy to protect Lt. Sousa at the expense of the plaintiff." In any event, the defendants' investigation was not inadequate in light of an obvious miscommunication and no claim of racial discrimination at the time of the investigation.

With regard to plaintiff's Disputed Issues # 14, 19, 22 (Recuperative Post) –

(#14) Plaintiff's allegation of derisive laughter is unsubstantiated and self-serving. Assuming arguendo that evidence had existed, one offensive utterance is not sufficient as a matter of law to establish a hostile work environment. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (citations omitted.) Nor does it establish an inference of race discrimination. Title VII is not a general civility code. Faragher v City of Boca Raton, 524 U.S. 775, 788 (1998); Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002); see also Manessis, 2003 U.S. Dist. LEXIS 1921 *24-25 (where personality, rather than discriminatory animus, is motivation for harassment, summary judgment should be granted.) (attached hereto).

---

[2] It has come to counsel's attention that there is a numbering error in the defendants' Rule 26 (a) statement in that there is a second # 24 on p. 11 located between # 47 and # 48.

(#19) There is no genuine issue of material fact in dispute relating to plaintiff's assignment to a recuperative post. None of the named defendants were involved in making that assignment. Moreover, it is undisputed that recuperative posts are part of the normal work assignment of a Correction Officer that do not involve inmate contact. Defendants' Rule 56(a), Exh. 4 Ryan Aff. with attached exh. D (last two pages especially). They are assigned to persons recuperating from illness who should not be subjected to risks associated with inmate contact. Plaintiff does not dispute that her doctor approved the assignment after reviewing tasks involved. Id. at attached exhs. D and E. Plaintiff provides no evidence that the tasks involved were different than those in the formal paperwork presented to her physician. It is also undisputed that her feeling of inability to perform that position well was answered by Captain Madden providing training by C/O Trainor. Defendants' Rule 56(a), Exhibit 5.

(#22) The first sentence of plaintiff's paragraph appears to be a duplication of her paragraph re issue # 19 along with an innuendo of a conspiracy which is not part of this case. See the next paragraph regarding remainder of par. 22.

With regard to plaintiff's Disputed Issues # 15, 22, and 23 (South Block 4/22/02) –

(#15) Whether or not Lt. Sousa was injured, with sufficient force to cause long-term injury or not, or fabricated such injury is not material to any element of plaintiff's cause of action or defendants' defense. Plaintiff admits that she received no discipline for this incident, and there is no basis to draw an inference of racial discrimination simply based on Lt. Sousa's reporting a workplace violence incident as required by agency directives.

7

(#22) All but the first sentence of plaintiff's paragraph # 22 appears to address the South Block Bubble incident on April 2002 and admits certain facts and claims insufficient knowledge as to others. Insufficient knowledge is an inappropriate response and cannot establish a disputed issue of material fact.

(#23) This paragraph appears to ask whether Warden Murphy participated in a conspiracy regarding the investigation of the South Block Bubble incident in April 2002. Conspiracy claims are not part of this case and therefore, cannot raise a genuine issue of material fact in dispute. Furthermore, plaintiff put forward no concrete evidence that she ever requested investigation of Lt. Sousa for fabrication of information.

<u>With regard to plaintiff's Disputed Issue # 17 (Overtime 7/24/02) –</u>

A disputed material fact cannot be established based on inadmissible hearsay and non-specific unsubstantiated information. See citations supra, p.2.

<u>With regard to plaintiff's Disputed Issue # 18 (Buzzer 8/13/02) –</u>

Plaintiff cannot establish a material issue of fact in dispute by speculating that Lt. Sousa's request to her to write an incident report on the buzzer entry problem was harassment when she admits that it was reasonable for him to request that a report be written up and takes issue only with his alleged sarcastic tone. Defendants' Rule 56(a)(1), Lewis Depo, pp. 131, 132. Title VII is not a general civility code and a mere offensive comment is insufficient to establish an incident in support of establishing a hostile working environment based on race. See citations supra, p. 6.

<u>With regard to plaintiff's Disputed Issue # 3 –</u>

Whether there is sufficient evidence of disparate treatment based on other complaints reflects a question of law and does not raise material issues of fact in dispute.

8

In addition, the non-specific reference to other complaints cannot establish a genuine issue of material fact in dispute. See citations supra, p. 2. The plaintiff has offered no evidence that similarly situated whites were treated any differently than blacks. The plaintiff cannot save her evidence for trial as she indicated she was intending to do on p. 21 and 22 of her brief. See <u>Weinstock v. Comumbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) <u>cert. denied</u> 124 S.Ct. 53, 157 L.Ed.2d 24 (2003) (at summary judgment, "the time has come…'to put up or shut up'") (citation omitted). "Plaintiff has pled (and expects to marshal evidence) that Sousa treated similarly situated white and male employees in a significantly different manner than he did Plaintiff." Plaintiff's Brief, p. 21. Plaintiff appears to be mixing up a disparate treatment analysis (which she abandons on p. 45) with a hostile work environment. See plaintiff's Amended Brief, pp. 16, 17, and 45. In light of the abandonment of a disparate treatment claim, any reliance on the plaintiff's affidavits submitted by co-workers is irrelevant and immaterial to her hostile work environment and retaliation claims. See also Argument III, infra.

<u>With regard to plaintiff's Disputed Issue # 4 and # 16 (referral of complaints) -</u>

(#4) For the same reasons stated at the end of the last paragraph, since disparate treatment analysis is no longer claimed, it is immaterial whether or not Murphy forwarded non-minority officers' complaints for further investigation. Assuming arguendo that disparate treatment were still viable, Plaintiff has failed to establish that there is a genuine issue of material fact as to whether Warden Murphy failed to refer complaints of black officers for investigation while referring complaints of white officers. Plaintiff has not substantiated such a claim with specific non-conclusory facts. Warden Murphy followed up on the discrimination complaints of other African Americans by

9

referring their matters to the appropriate agency personnel. See Defendants' Responses to Plaintiff's Interrogatory # 2 and # 4 (attached hereto), Supplemental Rule 56(a)(1) Statement, ¶ 89.

With regard to plaintiff's own case, the "refusal" to refer her grievances up the chain of command cannot constitute a genuine issue of material fact in dispute when none of them was characterized as a race-based action and she admits she never submitted complaints to DOC's Affirmative Action Unit when she knew the agency had an affirmative action policy and procedure, and did not claim race discrimination until Nov. 30, 2001 on the March 9, 2001 incident and on Sept. 30, 2002 for the others. Rule 56(a)(1) Fact # # 62, 63, 68, 84; Farragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Ind. v. Ellerth, 524 U.S. 2257 (1998) (when no tangible employment action taken, affirmative defense is available to employers who have anti-harassment policy in place and plaintiff failed to utilize it). Moreover, Murphy did refer C/O Lewis' complaint about the recuperative post assignment to Capt. Madden who responded by providing training, Rule 56(a)(1) Exh. 2, Murphy's Aff. ¶ 7 and Murphy referred the South Block Bubble incident report to both Affirmative Action and Workplace Violence personnel, which investigations would have unearthed any discriminatory conduct if it existed.

<u>With regard to plaintiff's Disputed Issue # 7 –</u>

Plaintiff's question regarding defendant Kruk's awareness of alleged disparate treatment in investigating incidents of white and minority officers supervisors at the Hartford facility does not raise a genuine issue of material fact in dispute because the plaintiff drops her disparate treatment claim, Plaintiff's Amended Brief, p. 45, and

10

because the plaintiff admits in her brief, p. 39-42, 45, that defendants Kruk and Lantz are no longer in the case with regard to Title VII and sec. 1981 liability.

With regard to plaintiff's Disputed Issues # 8 and 9 (supervisory role) –

(#8) Plaintiff again raises a legal question, not a disputed fact regarding vicarious agency liability. Furthermore, the difference between plaintiff's use of the term "occasional" and the defendant's use of the word "rare" cannot rise to the level of creating a genuine issue of material fact. Anderson, 477 U.S. at 247-48 ("mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment....")

(#9) The plaintiff raises a question of law by asking whether Lt. Sousa acted in a discriminatory fashion by not reassigning plaintiff from her recuperative post assignment. In addition, whether Lt. Sousa had discretionary authority to reassign plaintiff's recuperative post assignment is not material because even if he did have such discretionary authority, he did not have to exercise it in light of his supervisor's continual involvement and decision to provide training instead of reassignment. Defs.' Rule 56(a)(1), Exh. 2, Murphy's Aff. ¶ 7.

With regard to plaintiff's Disputed Issue # 10 –

Whether or not there was a steward conspiracy to get rid of Lt. Sousa does not create a genuine issue of material fact in dispute as it simply reflects Lt. Sousa's understanding as to why plaintiff and others complained about him. It does not help establish an element of the plaintiff's case, nor does it relate to the defendants' legitimate nondiscriminatory reason for defendants' actions.

<u>With regard to plaintiff's issue # 20 –</u>

This paragraph presents solely the legal question regarding whether a hostile work environment is established by the facts.

### B. <u>Plaintiff's Own Admissions Indicate No Material Fact In Dispute Relating to an Essential Element of a Title VII or § 1981 Cause of Action.</u>

"The substantive law governing the case will identify those facts that are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" <u>Reiter v. Metropolitan Transportation Authority of New York</u>, 2002 U.S. Dist. LEXIS 18537 (S.D. N.Y. 2002) citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). None of the plaintiff's disputed facts creates a genuine issue of material fact relative to the legal elements that the plaintiff bears the burden of establishing. The plaintiff admits that she was not disciplined at any time and has offered no evidence of any other conduct which would constitute an adverse employment action. Plaintiff's Rule 56(a)(2) # 31 and # 61. Moreover, it appears that the plaintiff is now dropping her disparate treatment claims. Plaintiff's Amended brief, p. 45.

The plaintiff's retaliation claims now appear to be limited to two incidents (the June 20, 2001 recuperative post assignment and the April 22, 2002 South Block Bubble altercation) and two defendants (Sousa and Murphy). Plaintiff's Amended Brief, p. 45. The plaintiff claims they are causally connected to her Nov. 30, 2001 CHRO filing. <u>Id.</u> However, clearly the June 20, 2001 assignment (made by non-defendant Capt. Madden and approved by plaintiff's doctor) occurred FIVE months PRIOR to her CHRO filing, and therefore, cannot constitute retaliation for something that had not yet occurred. The

12

April 22, 2002 incident occurred FIVE months after her filing which is too temporally removed to constitute causation as a matter of law. See Gross v. Nat'l Broadcasting Co., 232 F. Supp.2d 58 n.12 (S.D.N.Y. 2002) citing See e.g., Clark County Sch,. Dist. V. Breeden, 532 U.S. 268, 273 (2001) (citing with approval cases dismissing retaliation claims where there were three and four month periods between protected activity and adverse employment action, noting the temporal proximity must be "very close"); Cobian v. New York City, 2000 U.S. Dist. LEXIS 17479, No. 99 Civ. 10533, 2000 WL 1782744 at *16 (S.D.N.Y. Dec. 6, 2000) (dismissing retaliation claim where there was four month lapse between protected activity and adverse action), aff'd by summary order, No. 01-7575, 2002 W 4584 (2nd Cir. 2001) (other citations omitted.)

The plaintiff also fails to offer any evidence that her working environment was permeated with discriminatory intimidation, ridicule, and insult which was sufficiently severe or pervasive so as to alter the conditions of her working environment.[3] The plaintiff admits to knowing about DOC's anti-harassment policy and not filing an internal complaint with DOC's Affirmative Action Unit or its Commissioner claiming race discrimination. Plaintiff's Rule 56(a)(2) ## 62, 63, 83, 84, 85 ; see also Plaintiff's Rule 56(a)(2) ## 64-66. Therefore, no reasonable juror could find that the plaintiff was the subject of a hostile working environment due to her race.

On pages 17 and 18, Plaintiff attempts to base her retaliation claim on Lt. Sousa's knowledge of her filing a labor grievance and incident report regarding the delay in

---

[3] Since plaintiff had no awareness that her medical condition on March 9, 2001 was a precursor to a heart attack and because plaintiff had no problem with Murphy and Sousa prior to her heart attack, Plaintiff's Rule 56(a)(2) # 48, ## 87-88, there is no basis for anyone to infer discriminatory intent by them for conduct related to the March 9, 2001 incident.

13

providing relief. However, as a matter of law plaintiff's filing of those items[4] cannot constitute the basis for retaliation because they are not activities protected by Title VII. Instead, they are claims of labor violations and internal agency administrative reports. Furthermore, awareness of plaintiff's opposition does not translate into retaliatory motive. Daniels v. Townsley, 161 F. Supp.2d 63, 71 (D. Conn. 2001) (plaintiff failed to establish concrete evidence of an illegal motive and a timely causal connection). Plaintiff's attempt to establish individual retaliatory motive by "a circumstantial flavor" of improper conduct cannot defeat summary judgment. Daniels, 161 F. Supp.2d at 72.

Similarly, the plaintiff cannot rely on her union grievances, see p. 35 of Plaintiff's Amended Brief, to refute the employer's defense to a hostile work environment claim that she did not take advantage of the employer's anti-harassment procedures. The labor union process is totally separate and distinct from the affirmative action process and cannot be considered as satisfaction of the employee's burden to report discrimination to her employer. See Okoloji v. DSS, 3:01cv 1421, p. 6 (AHN) (D. Conn. 2004) (summary judgment granted) (attached hereto) citing See International Union of Elec. Workers v. Robbins & Meyers, 249 U.S. 229, 236 (1976) (utilization of union grievance procedure does not affect timeliness of EEOC filing); See also, Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974); Kruk Deposition, pp. 91:15-23. Therefore, contrary to the plaintiff's statement on p. 36 of her Amended Brief, the defendants do dispute that the

---

[4] The plaintiff allegedly filed her incident report regarding the March 9, 2001 at a later time than the original. See Rule 56(a)(1), Exh. 2, Murhy's Affidavit, ¶ 2 with attached Exhibit A.

14

filing of her union grievances, which did not specifically claim race discrimination, constitute protected activity.[5]

### III. Other Pertinent Responses To Plaintiff's Amended Brief.

On pages 20-21 and 27-28 of plaintiff's brief, the plaintiff cites <u>Alfano v. Costello</u>, 294 F.3d 365 (2d Cir. 2002) for the proposition that a hostile work environment can be supported by facially race-neutral incidents if the totality of the circumstances establish an inference of such race-based bias. However, a closer reading of <u>Alfano</u> indicates that the court was simply recognizing that where there is some overtly racial remark or incident, other facially neutral remarks or incidents could be used to establish a course of discrimination.

> Although we conclude ultimately that Alfano failed to demonstrate a sex-based hostile work environment, we reject (as the district court rejected) the argument that such a claim can be supported only by overtly sexual incidents. There is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not. See e.g, <u>Raniola v. Bratton</u>, 243 F.3d 610, 622-23 (2d Cir 2001); <u>Howley</u>, 217 F.3d at 155-56.

294 F. at 375. The court went on to remove from consideration several facially neutral incidents because they did not support an inference that the conduct was because of her race. <u>Alfano</u>, 294 F.3d at 377.

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will

---

[5] Likewise, any administrative incident reports allegedly filed by the plaintiff with agency personnel not within the Affirmative Action Unit, also do not constitute protected activity within the meaning of Title VII.

15

> become a court of personnel appeals. See e.g., Byrnie v. Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) [other citations omitted.] ....
>
> Keeping these considerations in mind, we see that the majority of incidents cited by Alfano are sex-neutral on their face. Facially neutral incidents may be included, of course, among the "totality of the circustances" that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory. Compare Howley, 217 F.3d at 155-56 (holding that factfinder could reasonably infer that facially sex-neutral incidents were sex-based where the perpetrator had previously made sexually derogatory statements), and Williams v. Gen. Motors Corp., 187 F.3d 553, 560-64 (6th Cir. 1999) (where plaintiff was ostracized on multiple occasions, the use of sex-specific slurs in some incidents justified the inference that all of the incidents were sex-based, allowing the facially neutral incidents to be considered in hostile work environment analysis), with Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir. 2000) (objectionable but facially sex neutral behavior by one person could not be considered in hostile work environment claim where there was no evidence of that person's bias).

Id. at 377-78.

The plaintiff in our case has put forward absolutely no evidence of a racially charged statement or incident, and thus, there is no basis to draw an inference of racial discrimination from solely race-neutral incidents. The plaintiff argues, on p. 21, that such an inference should be drawn from the complaints of discrimination made by co-workers against Lt. Sousa and to that end attaches non-specific conclusory affidavits from such persons. However, anyone can file a claim of discrimination without basis. There was never any substantiation of such claims and no findings of discrimination ever made. In fact, the persons making such claims never offered any supporting documentation or otherwise pursued such claims. Defs.' Supplemental Rule 56(a)(1) Statement, ¶ 89, Defendants' Responses to Plaintiff's Interrogatories, # 2 and # 4. Furthermore, unsubstantiated claims of others unrelated to the plaintiff's facts cannot establish

admissible evidence of racial discrimination in this case, and therefore, should not be considered. See e.g., Hester v. Bic Corp., 225 F.3d 178 (2d Cir. 2000) (jury award vacated because coworkers' testimony that a supervisor's treatment of employee was race-based was naked speculation, not admissible lay testimony); Manuel v. City of Chicago, 335 F.3d 592 (7thCir. 2003) (motion in limine granted re other alleged acts of discrimination by supervisor because unfairly prejudicial); Tennison v. Circus Circus Enterprises, 244 F.3d 684 (9th Cir. 2001) (probative value of coworker's testimony of sexual harassment was outweighed by danger of undue prejudice, and risk of mini-trial provided bases to exclude co-worker testimony.); Swanson v. General Services Administration, 110 F.3d 1180, 1186 (5th Cir. 1997) (conclusory nonspecific opinion statements by other employees that "blacks were closely watched" are not evidence competent to establish a pattern of discrimination); Hogan v. AT&T, 812 F.2d 409, 410-11 (8th Cir. 1987) (testimony that a supervisor had a "hostile and belligerent relationship with black employees" was excluded); Franco-Rivera v. Chairman of the Bd. of Directors of the Federal Deposit Insurance Corp., 751 F. Supp. 13, 14 n. 1 (D. Puerto Rico 1990) (motion in limine granted to exclude others' testimony about their own discriminatory complaints as irrelevant to plaintiff's claim; plaintiff would have to show similarly situated persons outside protected class were treated favorably) [citations omitted.] Moreover, as contemplated on pp. 21-22, plaintiff cannot wait until trial to disclose evidence she thinks will establish race discrimination. Weinstock, 224 F.3d at 41.

On p. 25 of Plaintiff's Amended Brief, plaintiff has offered no citation to support the fact that she ever requested of Lt. Sousa not to work the Lobby Control recuperative post. Similarly, on p. 26, the plaintiff has offered no citation to support the fact that she

17

ever requested Warden Murphy to investigate an alleged fabrication by Lt. Sousa of the April 22, 2002 South Block Bubble incident. In any event, any such fabrication would necessarily have come to light in the course of the investigation initiated by Lt. Sousa's incident report

The plaintiff's reference to a "cover-up" on p. 28 should be disregarded as outside the scope of this federal complaint. There is no charge of conspiracy by the plaintiff against the defendants in the complaint.

Plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'" Taylor v. Potter, 2004 U.S. Dist. LEXIS 15992 *36 (S.D.N.Y. 8/16/04) citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996). The plaintiff in Taylor claimed that the defendant was "well known" for his "racial animus." 2004 U.S. Dist. LEXIS 15992 * 21, * 49, 52. This is not unlike our plaintiff's attempt to characterize Lt. Sousa as a racist by dint of the affidavits of other African-American complaints. However, the conclusory allegations by the plaintiff and others in Taylor did not establish a material issue of fact because there was no evidence that the defendant supervisor treated whites better than blacks and personal animosity did not constitute evidence of discrimination.

> While inappropriate, McCall's derogatory comments (or being 'very, very mean') made without distinction to employees' race are not actionable under title VII. See e.g., Bickerstaff v. Vasser College, 196 F.3d 435, 452 (2d Cir. 1999) ('While [superior's] allegd comments may be rude and derogatory, Title VII is not a 'general civility code.'") (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998), cert. denied, 530 U.S. 1242, 120 S. Ct. 2688 (2000); Williams v. N.Y.C. Dep't of Sanitation,

>   2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at * 15 (S.D. N.Y. Sept. 28, 2001) (Peck, M.J.) ('Of course, 'unfair' treatment or personal animosity is not actionable, only discriminatory treatment is.')…'Personal animosity is not the equivalent of…discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a …discrimination case by accusation.' [further citations omitted.]

To conclude, the plaintiff's offer of only "conclusory statements and subjective feelings – not facts" from herself and her friends that she was treated differently because of her race are insufficient to overcome summary judgment. See Gross, 232 F.Supp.2d at 72 citing See Bickerstaff, 196 F.3d at 452 (statements devoid of specifics, but replete with conclusions, are insufficient to defeat summary judgment). The defendants have demonstrated the absence of a genuine issue of material fact in dispute and the plaintiff has failed to come up with enough evidence to support a jury verdict in her favor based merely on a metaphysical doubt concerning the facts or conjecture or surmise as such will not defeat summary judgment. Bryant v. Maffucci, 923 F.3d 979 (2d Cir. 1991) citing see Matsushita Electric Industrial Co. v Zenith Radio Corp. 475 U.S 574, 586 (1986). The defendants request summary judgment on behalf of all defendants. Please note that the plaintiff, on p. 45, has dropped defendants Kruk and Lantz from the case.

19

DEFENDANTS,
DEPARTMENT OF CORRECTION,
ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: /s/ Beth Z. Margulies
Beth Z. Margulies
Assistant Attorney General
Federal Bar # ct08469
55 Elm Street, P.O. Box 120
Hartford, CT 06141-1020
Tel.: (860) 808-5340
Fax: (860) 808-5383
E-mail: Beth.Margulies@po.state.ct.us

## CERTIFICATION

I hereby certify that pursuant to §5(b) of the Federal Rules of Civil Procedure, a copy of the foregoing Defendants' Reply Brief in support of Defendants' Motion for Summary Judgment was sent via first class mail, postage prepaid, this 21st day of September, 2004 to:

Lowell L. Peterson, Esq.
Community Law Practice, LLC
2065-A Main Street
Hartford, CT 06120
Tel.: 728-3788
Fax: 728-3755

/s/ Beth Z. Margulies
Beth Z. Margulies
Assistant Attorney General

20