UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRENDA LEWIS, | : | CASE NO. 3:02CV2304(MRK) |
|    *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF CORRECTION, ET AL. | : | |
|    *Defendants* | : | JULY 15, 2005 |

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF THEIR MOTION IN LIMINE**

**I.    INTRODUCTION**

Plaintiff, an African American female, is currently employed with the Department of Correction ("DOC"). She alleges that she was subjected to a racially hostile work environment premised on several incidents that involved one of her few white supervisors.[1] All of the other claims have been dismissed on summary judgment.

This motion in limine addresses two evidentiary issues, one related to black co-workers and a second related to allegedly similarly situated medical relief and unauthorized leave incidents. With regard to the first, the plaintiff's witness list includes several black DOC employees, union stewards and friends who will testify to their "opinions" about defendant Sousa's racial animus based upon the following affidavit testimony of witnesses Smith, Porter, Goodison and Denby:

> In my capacity as union steward, it was my consistent observation that a disproportionate number of complaints with respect to conduct of Lt. Sousa have been made by racial minority officers and, inversely, a disproportionate number of complaints made by Lt. Sousa against correction officers have been made against minority officers.
>
>                       * * *

---

[1]   Plaintiff alleges a racially hostile work environment against defendant Lt. Sousa individually under 42 U.S.C. § 1981 and against DOC under Title VII.

> It has been my observation that, during those shifts when Lt. Sousa is the desk lieutenant, actual assignments on the daily roster are regularly and frequently changed to effect that a disproportionately high number of black officers are assigned to positions with inmate contact and a correspondingly disproportionately high number of Hispanic officers are assigned to the preferential positions that do not include inmate contact.

(Plaintiff's Exhibits B-D in resistance to Summary Judgment).

In addition, witnesses Jacqueline Foster-Eady, Elwood Evans, Carlos Garcia and Patricia Gonzales will testify to other acts of discrimination they either allegedly witnessed or experienced.

The defendants move to preclude the plaintiff from introducing the testimony at trial of the following witnesses: Eunice Smith, Harris Porter, Errol Goodison, Bruce Dendy, Foster-Eady**,** Patricia Gonzales, Carlos Garcia and any other co-worker who offers their opinion and whose experience was not witnessed by the plaintiff on the grounds that their unsubstantiated opinions of racial discrimination by Lt. Sousa is precluded by Federal Rules of Evidence 401, 402, 403 and 701. The defendants also move to preclude evidence related to other incidents of medical relief as a disparate treatment analysis is not appropriate in the context of a hostile work environment claim.

## II.  ARGUMENT

### A. Black Co-Workers

To prevail on a racially hostile work environment claim, plaintiff must prove (1) that she was subjected to verbal or physical <u>conduct of a racial nature</u>; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was <u>directed at her because of her race</u>; and (4) there is a basis for imputing the conduct at issue to her employer. <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002) (emphasis added); <u>Vasquez v. County of Los Angelos</u>, 349 FF.3d 634, 642 (9th Cir. 2003). Unlike a

2

disparate treatment case, where a plaintiff can offer evidence of intent to establish an inference of discrimination,[2] a plaintiff in a hostile work environment case must prove that the conduct she suffered is of a racial nature. In this case, not only do none of the alleged incidents happening to plaintiff reflect conduct of a racial nature, but also the incidents that allegedly happened to her co-workers do not reflect conduct by Lt. Sousa of a racial nature. Therefore, they are irrelevant and immaterial to plaintiff's case in chief.

The plaintiff seeks to offer numerous exhibits (##18-24, 47, 55) that pertain to the various self serving complaints made by black union members against defendant Sousa. The plaintiff hopes that from adducing evidence of unsubstantiated complaints of disparate treatment by other black employees an inference can be drawn in the present case that the plaintiff suffered from a racially hostile work environment. The defendants remind the court that there is a difference between a claim of disparate treatment in the terms and conditions of employees based on discrete acts (allegedly toward others in this case) versus a hostile work environment claim by the plaintiff. The unique nature of the latter requires evidence that the <u>plaintiff</u> was subjected to an environment that was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victims employment" <u>Harris v. Forklift Sys., Ins.</u>, 510 U.S. 17, 21 126 L.Ed.2d 295 (1993). In the present case there is no allegation

---

[2] Even in disparate treatment claim cases, admissibility of the type of evidence sought by plaintiff has been limited. <u>Heno v. Spring/United Managmeent Co.</u>, 208 F.3d 847, 856 (10th Cir. 2000) ("Anecdotal evidence of discrimination should only be admitted if the prior incidents of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand."); <u>Punsal v. the Mount Sinai Service of the Mount Sinai School of Medicine of New York University, et al.</u>, 2004 U.S. Dist. LEXIS 5739 * 34-35 (S.D.N.Y. 2004) (fact that coworkers filed discrimination claims against employer is of minimal probative value.)

that Lt. Sousa ever used, or subjected the plaintiff or any other DOC employee to, derogatory racial remarks, insults or ridicule.  Nor do the incidents identified by plaintiff's witnesses fall neatly into such claim. Most of the complaints involve incident reports when Lt. Sousa reported the violation of work rules by corrections officers.   The enforcement of official agency rules cannot constitute discrimination.

The defendants object to the admission of these exhibits as unduly prejudicial, improper opinion testimony and improper character evidence.  Further, the defendant's submit that as the court considers all of circumstances to ascertain whether the environment was sufficiently hostile or abusive, the facts and case law weighs against allowing any testimony from plaintiff's friends and exhibits of **unsubstantiated** complaints against Lt. Sousa that either contain no allegations of a racially hostile work environment or are simply the witnesses' self characterization of the situation as harassment.

In Leibovitz v. New York City Transit Authority, 252 F.3d 179 (2d Cir. 2001), the plaintiff in a sexually hostile environment case sought to premise her claim upon the harassment of other females in the workplace. After recognizing that in some circumstances evidence of  "comments made outside the plaintiff's presence" may be admissible to demonstrate the nature of the work environment, the Court of Appeal left open the issue of whether a claim for a hostile environment by a person who was never subjected to sexual harassment can be premised upon the harassment of other employees. The Second Circuit in Leibovitz held that the plaintiff, who had not experienced harassment or witnessed harassment herself, but only had been told of it by third persons, failed to demonstrate that the other female workers' harassment adversely affected the

4

terms and conditions of her employment, and could not demonstrate that she suffered harassment either in subjective or objective terms. 252 F. 3d at 182 ("Title VII's prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay"). The case law relied upon by the court in Liebovitz as a basis for the possible admission of others' comments is easily distinguished and therefore not controlling for the present case. In all those other cases cited in Liebovitz, the plaintiffs experienced some overt racial or sexual comment.

In Cruz v. Coach Stores, 202 F.3d 560 (2d Cir. 2000), the court permitted evidence of offensive racial remarks such as "nigger" directed at members of the plaintiff's protected class. Such is not the case with Brenda Lewis, who does not contend that defendant Sousa ever directed racial remarks or ridicule towards her. Similarly in Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d Cir. 1997), the court of appeals affirmed the District court's decision to exclude certain evidence of other complaints of sexual harassment as unfairly prejudicial. Noting that in some cases other complaints of sexual harassment can be probative, the court reiterated that unfairly prejudicial evidence can be excluded.

In the present case, several black co-workers and friends of Brenda Lewis want to testify to their "experiences" with defendant Sousa which they now contend were racially motivated. It is noteworthy that none of the alleged complaints by witnesses Smith, Goodison, Denby, Evans, Porter, Gonzales, Channer, Eady and Garcia were substantiated. Furthermore, most of the complaints by these witnesses have nothing to do with a racially hostile work environment, but are more accurately orchestrated complaints about Lt. Sousa for reporting work rule violations to his superiors. For instance, C/O Harris Porter

5

filed a request for an investigation of Lt. Sousa on May 8, 2001. But when asked to provide the names of staff members who complained about Lt. Sousa, Harris did not respond to the DOC inquiry.

On November 20, 2001, C/O Goodison filed an incident report alleging that Lt. Sousa stepped "out of the Lieutenant's office in a threatening way". No additional facts were described in the report. So what the court will hear is Goodison's description of the event and his opinion about defendant's Sousa's motivation? Nowhere does Goodison allege that he was subjected to racial remarks or ridicule. Instead, the plaintiff wants Goodison to speculate about Lt. Sousa' motivation.

In April 27, 2000, C/O Smith complained about late relief from her post after her shift was over. She also complained on a different date about of the DOC Officers Major Gilbert and Lt. Barnette. She has filed numerous reports and lawsuits alleging various slights, often refusing to provide reqested information by the Affirmative Action office. Her complaints for petty slights are not relevant because the sole purpose is to taint defendant Sousa with innuendo, speculation and suspicion.

The plaintiff also wants to offer the testimony of Lt. Eady, a black officer, about her personal conflicts with Lt. Sousa. She believes that Lt. Sousa was untruthful and was a favorite of the commanding officers. As with the other witnesses, Lt. Eady's opinions about Lt. Sousa are unfairly prejudicial because it forces the defendant and the court to litigate numerous complaints that are <u>not</u> the subject to this lawsuit. Furthermore, allowing such testimony will force the defendants to call numerous witnesses to discredit plaintiff's witnesses thereby reducing this testimony into a "he said she said" situation that detracts from the central issue.

6

The defendants remind the court that personality conflicts, gruff personal skills, or even yelling by a manager do not establish a cause of action under Title VII. Farragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("Title VII does not become a "general civility code."). The inevitable consequence of such testimony would be that several mini-trials related to each of the other employees' incidents would ensue, and the jury will impute liability to either of the defendants based on alleged acts that have no causal nexus whatsoever to the plaintiff's particular circumstances. The defendants also hereby request a Rule 103(c) hearing outside the presence of the jury requiring that the plaintiff make an offer of proof establishing both the relevancy and foundation for these witnesses' testimony.

**RELEVANCY**

At the outset, the defendant apprised the court that the plaintiff was deposed on January 21, 2004. During her deposition, she was asked about the witnesses mentioned above. She testified to two salient points: (1) she only learned about the alleged incidents involving these witnesses from hearsay; and (2) the incidents involving these witnesses occurred either a year before the plaintiff's initial incident with Lt. Sousa or AFTER the alleged harassment to the plaintiff that occurred on March 9, 2001. (See Exhibit A, Deposition of Plaintiff, pages 50-59). [3]

In Schwapp v. Town of Avon, 30 F.Supp.2d 279 (D. Conn 1998), the plaintiff brought a hostile work environment claim. As part of his evidence he sought to introduce racial comments that he neither heard nor were directed towards him. What happened

---

3   The plaintiff claims she was harassed through five incidents separated by several months each time, occurring on 3/9/01, 6/20/01, 3/29/01, 4/22/02, and 7/24/02. None of these incidents involved any racial remarks, ridicule or comments by Lt. Sousa.

7

was that several white officers resented their supervisor and as part of the plaintiff's "support group", reported to him every instance of what could be considered to be racial remarks made by supervisory officers, including some that went back a number of years. The plaintiff collected these remarks and then claimed to have relied upon them for a racially hostile work environment even though they had not been directed towards him. The district court on remand from a reversal by the Second Circuit, rejected the plaintiff's argument that he could introduce such evidence based upon remarks that were not directed towards him. Id. at 282.

The reasoning in the Schwapp case is particularly important to the present facts because the testimony the plaintiff seeks to elicit from these witnesses does not pertain to racial remarks or comments that could give raise to a racially hostile work environment. Instead, these witnesses, all friends or co-workers of the plaintiff, provided the plaintiff with information the she neither witnessed nor was aware of until so informed by the witnesses after the fact. (See Exhibit A, Deposition of Plaintiff, pages 50-59). Rather, the plaintiff seeks to have these witnesses express their "opinions" about Lt. Sousa's motivation based on, as yet, unsubstantiated assertions of racial hostility because of their disputes with him or because black employees filed more claims against Lt. Sousa than white DOC employees. Such testimony lacks the requisite foundation to make the testimony of these witnesses probative to the plaintiff's hostile work environment claim. Sanders v. New York City Human Resources Administration, 361 F.3d 749, 757 (2d Cir. 2004); Haskell v. Kaman Corp., 743 F.2d at 120 (2d Cir. 1984).

**RELEVANCE OF STATISTICAL CONCLUSIONS**

8

At the outset, the defendants remind the court that the testimony of the witnesses mentioned above as to their opinions about the number of black employees harassed by Lt. Sousa lacks foundation and is irrelevant. The testimony of these witnesses gives no specific examples of similar conduct involving identified white employees.[4] Instead, what they offer is their "opinions" that based on their perception of raw numbers,[5] a disproportionate number of minority employees have filed claims against Lt. Sousa and have also have been written up by him. However, raw numbers and general conclusions are inadmissible because such statements do not account for legitimate nondiscriminatory reasons for such a disparity, if one actually exists. It is established law in this circuit that statistical evidence in a disparate treatment case is generally admissible if the requisite foundation is established. Hollander v. American Cyanamid Co., 172 F. 3d 192, 202 (2d Cir. 1999). However, before such statistical evidence is admissible, the offering party must establish the reliability of any inferences to be drawn from the statistical evidence. Id. at 203.

In the Hollander case, the plaintiff brought an age discrimination claim for wrongful termination. In support of his case, the plaintiff sought to offer the statistical reports of an expert who had analyzed the terminations at the defendant's plant and was prepared to opine within a high degree of statistical certainty that age was a determining

---

[4] Witness Denby testified to an example in which he claims to have been disciplined for conduct that white employees were permitted to do by Lt. Sousa, but he identifies no specific white employee and does not provide a basis for his claim that Lt. Sousa knew of the similar conduct by the white employees who were not disciplined.

[5] Defendants anticipate that these black employees will testify that they are not employed in the Human Resource or Affirmative Action Departments of DOC, and therefore, are not in a position even to know what are the accurate statistics.

9

factor in the plaintiff's termination.  Finding the expert's opinion based on raw statistics to be unreliable, the trial court excluded the experts' testimony.  On appeal, the Second Circuit Court of Appeals affirmed the trial court ruling.  Acknowledging the unreliability of raw statistics, the Court of Appeals stated the following:

> However, the Report's inference of discrimination **solely on the basis of the raw numbers is impermissible in the absence of any attempt to account for other causes of the . . . anomaly.** . . .  Highlighting Gaudard's failure to account for explanations other than discrimination is the fact that both 60-69 and 70-79 level 9+ workforce increased moderately over the course of those years.  In short, data presented by Gaudard's in this part of the report does not make it any more or less likely that Cyanamid is liable for age discrimination.  (Emphasis added).

Id. at 203.  See also, Delgado v. Achieve Global, 2000 Conn. Super LEXIS 3184 (November 15, 2000, Melville J).

The purpose for this rule is to prevent generalized conclusions based on unsubstantiated raw data, such as in the present case. Absent specific information showing a statistical disparity involving Lt. Sousa that eliminates those circumstances involving legitimate nondiscriminatory reason for the discipline of minority employees, the conclusions of these witnesses is not admissible because it lacks foundation and is irrelevant.

## CHARACTER EVIDENCE

Rule 404(b) of the Federal Rules of Evidence prohibits the introduction of prior acts to prove the character of a person in order to show conformity therewith. However, when such evidence is being used for different purpose such as to show motive or intent, the plaintiff must meet two requirements. First, there must be a similarity between the proffered evidence and the acts at issue, or the other acts are irrelevant.  Safford v. Tammany Parish Fire Protection District No. 1,  2004 U.S. Dist. 2004 (E.D. La 2004);

10

United States v. Beecham, 582 F.2d 898, 911 (5th Cir. 1978). If the requisite similarity exists, the court must then weigh whether the probative value of the extrinsic acts evidence is outweighed by its prejudicial effect under Rule 403.

In the present case, allowing these witnesses to testify to other alleged acts involving Lt. Sousa, (none of which to date involve racial slurs or comments) without foundation showing any casual nexus to the plaintiff hostile work environment claim effectively and unfairly forces defendant Sousa to defend acts that are not before the court and to which he has had no advance notice. While other acts of discrimination may be relevant in limited circumstances, unsubstantiated claims and the self serving opinions of other employees are not material to this case.

## SPECULATION and IMPROPER OPINION

Witnesses Smith, Porter, Goodison, Gonzales, Garcia and Denby seek to express their personal "opinions" of Lt. Sousa's racial animus by way of unsubstantiated statistics about the number of black employees who have either complained about Lt. Sousa or their personal opinion about his motivation towards them. Essentially, these witnesses want to stigmatize Lt. Sousa as a racist by suggesting such a conclusion to the jury.

Rule 701 of the Federal Rules of Evidence governs the admissibility of lay opinion testimony. In Hester v. BIC Corporation, 225 F.3d 178 (2d Cir. 2000), the plaintiff in a disparate impact case offered the testimony of coworkers who opined that the defendant's manager was a racist. On appeal, the Second Circuit reversed on the grounds that the employees should not have been permitted to express such opinions. In so holding, the Appeals Court stated:

> There is evidence that CSD [Customer Service Department] employees (particularly former members of the former OPD [Office Product Department])

11

>chafed under Ms. Beck's harsh managerial style, but as the district court suggested (in an understatement), "It is not an automatic jump" to infer that Beck is racist. One purpose of Rule [**17] 701(b) is to prevent lay witnesses from suggesting that they jury take such a jump. *See Rea*, 958 F.2d at 1215 (holding that "[rule 701] provides assurances against the admission of opinions which would merely tell the jury what result to reach"). We conclude that the opinion testimony concerning Beck's racial motivation was inadmissible under the Rule
>
>A number of federal appellate decisions support this conclusion. In *Mitroff v. Xomox Corp.*, 797 F.2d 271 (6th Cir. 1986) the court held [in]admissible the lay opinion of an assistant manager that the employer engaged in patterns of age discrimination.

Id. at 184-185.

The Second Circuit has more recently in 2004 held that co-employees opinions of retaliatory discrimination were not to be used as binding admissions of defendants' against them and did not establish a matter of actual motive. Sanders v. N.Y. City Human Resources Admin., et al, 361 F.3d at 757. The Second Circuit also held that it was proper to exclude the statements under Federal Rule of Evidence 403 "because its potential for unfair prejudice or confusion substantially outweighed its probative value." Id. at 757-758. Cf. Barrett v. Orange County Human Rights Commission, et al., 194 F.3d 341 (2d Cir. 1999) (in a First Amendment context, that a lower court "was not required to allow the trial to be diverted into an inquiry into an entirely different incident involving to a signficant extent different people, places and events.") citing Perry, 115 F.3d at 150.[6]

---

[6] In the earlier case of Perry v. Ethan Allen, Inc., 115 F.3d 143, 150-51 (2d Cir. 1997), the court also upheld the lower court's exclusion of evidence of others' experiences (not heard or witnessed by the plaintiff) on grounds of prejudicial effect outweighing probative value, even though it did not find such evidence to be per se inadmissible. However, earlier Second Circuit caselaw held in an employment discrimination case that "the district court erred by admitting evidence about alleged discrimination toward other individuals because such evidence was not relevant to plaintiff's claim of discrimination." Haskell v. Kaman Corp., 743 F.2d 113, 120 (2d Cir. 1984).

12

Similarly, in <u>Swanson v. General Services Administration</u>, 110 F.3d 1180 (5th Cir. 1997), the Fifth Circuit also rejected the opinion testimony of lay witnesses to the effect that "blacks were closely watched." In so ruling, the court stated:

> Like much of the "evidence" upon which Swanson relies, Whittington's and Andrew's statements are not "evidence" – they simply reflect the opinions of the witnesses on a fact issue that is for the jury to decide. Without testimony of the circumstances, or without examples of blacks who were scrutinized while similarly situated whites were not, a broad, generalized statement that black employees were "watched" more closely than whites is incompetent to establish a pattern of discrimination.

<u>Id</u>. at 1186.

In the present case, any testimony by witnesses who offer their own opinions constitute unsubstantiated and improper lay opinions under Rule 701.

**UNFAIRLY PREJUDICIAL**

The Court has wide discretion relative to admission of evidence under Rule 403. The Rule grants the court broad discretion to weigh the probative value of the evidence against the negative factor of prejudice. See, e.g., <u>United States v. Abel</u>, 469 U.S. 45, 54, 105 S. Ct. 465 (1984); <u>United States v. Beech-Nut Nutrition Corp.</u>, 871 F.2d 1181, 1193 (2d Cir.), <u>cert denied</u>, 493 U.S. 933 (1989); <u>United States v. Jamil</u>, 707 F.2d 638, 642 (2d Cir. 1983). In this matter, permitting the plaintiff to parade disgruntled employees, including those who have a personal ax to grind against Lt. Sousa would be unfairly prejudicial and adds no probative value to the issue of a racially hostile work environment for the plaintiff. <u>Sanders</u>, 361 F.3d at 758 (2d Cir. 2004).

Focusing on the phrase "employment practice" appearing in Title VII as applied to a hostile work environment, in <u>National Railroad Passenger Corp. v. Abner-Morgan</u>, 536 U.S. 101 (2002), the Supreme Court described the nature of a hostile work

environment claim to be different than a disparate treatment claim premised upon discrete acts. The Court noted that a hostile work environment claim requires a workplace "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).

In the present case, the plaintiff seeks to intertwine alleged acts of disparate treatment to other employees with her hostile work environment claim.[7] This is troubling and unfairly prejudicial to the defendants because the "other acts" do not concern a hostile work environment and are not proven acts of discrimination. Unlike evidence of racial comments, jokes or comments that can be presented as facts, the speculative opinions of these witnesses about Lt. Sousa's motivation lack foundation and is unfairly prejudicial. Essentially what the plaintiff wants to do is throw every opined discriminatory act she can conjure up by her friends in hope that something will taint the defendants.

Testimony from co-workers that they were subject to discrimination is excluded under Rules 403 based on the lack of probative value and potential unfair prejudice. See, e.g., Sanders, 361 F.3d at 757 (2nd Cir. 2004) (prejudicial effect outweighed probative value of other employees claims of retaliatory discrimination);. Manuel v. City of Chicago, 335 F.3d 592 (7th Cir. 2003) (court granted motion in limine because other alleged acts by supervisor were unduly prejudicial)**;** Tennison v. Circus Enterprises, 244 F.3d 684 (9th Cir. 2001) (probative value of coworker's testimony of sexual harassment

---

[7] The plaintiff intends to offer testimony and incident reports of co-workers that include a wide range of situations, including but not limited to providing medical relief to others as well as unauthorized leaving of post. See next argument section.

14

was outweighed by danger of undue prejudice and risk of mini-trial provided basis to exclude coworker testimony.).

Similarly, testimony that a supervisor had a "hostile and belligerent relationship with black employees" was excluded in Hogan v. American Telephone & Telegraph Co., 812 F.2d 409, 410-11 (8th Cir. 1987), on the basis that the testimony was unfairly prejudicial.

Patently, the only basis for the inclusion of these witnesses on the plaintiff's witness list is to potentially inflame the jurors' minds.  None of these witnesses testified by affidavit to any specific facts showing harassing conduct by Sousa.  Instead, potential witnesses  Smith, Porter, Goodison and Denby will testify that in their personal opinions that black employees file more claims against Lt. Sousa or are disciplined at greater frequency.  Such evidence is unfairly prejudicial not only because it doesn't  bear directly on the issue of racial harassment,  but also because such testimony might confuse the jury into making illogical inferences that cannot be sustained under the law. The court need only imagine the leap of logic a jury might make based on witness testimony suggesting that merely because more black employees filed complaints about Lt. Sousa he must have racially harassed the plaintiff.   The defendants remind the court that the plaintiff testified that she only learned of the complaints by Eunice Smith, Harris Porter, Patricia Gonzales, Carlos Garcia and Errol Goodison directly from the hearsay statements of these and other employees.

> **WITNESSES SMITH, DENBY, FOSTER-EADY SHOULD BE EXCLDUED BECAUSE THEY HAVE A PENDING CLAIM AGAINST THE STATE AND THEIR TESTIMONY IS SO BIASED AS TO BE UNFAIRLY PREJUDICIAL.**

15

Plaintiff's potential witnesses, Eunice Smith, Bruce Denby and Jacqueline Foster-Eady[8] currently have a case pending against the State of Connecticut for employment discrimination. See <u>Smith v. DOC</u>, Docket No. 3:03CV0386 (AWT).  The defendant submits that any testimony from these witnesses would be tainted and extremely biased. The allowance of the testimony of Ms. Smith and other potential witnesses with similar complaints would be unfairly prejudicial to the defendant.  See, <u>United States v. Ricks</u>, 882 F.2d 885, 893 (4th Cir. 1989), <u>cert denied</u>, 493 U.S. 1047 (1990); <u>United States v. King</u>, 713 F.2d 627, 632 (11th Cir. 1983), <u>cert denied</u>, 466 U.S. 942 (1984).

While bias is typically a matter for cross examination, when the bias is so tainted, as the defendants submit is the case with these witnesses, the court must step in and preclude their testimony. See <u>McKinney v. State of Connecticut</u>, No. 03CV0935(MRK), (D. Conn. 2003) (court orally granted  motion to exclude testimony of witness who had filed pending action against the state as unfairly prejudicial).

B.  <u>Other Medical Relief Incidents</u>

Plaintiff's exhibits # 32, 48-53 pertain to other medical relief incidents.  Plaintiff cannot establish that the employees in those incidents are similarly situated to the plaintiff.  They contain no information that would indicate the timeliness of those employees receiving medical relief and Lt. Sousa is not involved in many of those instances.  Different actors, different circumstances, and different knowledge communicated requesting relief undermine the plaintiff's attempt to establish these other employees as similarly situated.  Moreover, a disparate treatment analysis is inappropriate in the context of a hostile work environment, because the focus of the latter

---

[8] This argument pertains to any possible witness who also has brought a claim or lawsuit against the defendants.

16

analysis is on whether the plaintiff suffered severe and egregioius conduct so as to alter her working conditions. Whether or not other whites or blacks received prompt medical treatment is only relevant to a disparate treatment claim, which has been dismissed by this court. Plaintiff should have to proof the relevancy and materiality of these other medical relief incidents before being able to admit such evidence.

### III.  CONCLUSION

For all of the above stated reasons, the defendant moves for an order in limine prohibiting the plaintiff from presenting the above named witnesses who would offer evidence that is highly inflammatory and unfairly prejudicial to the defendants about other acts of alleged discrimination or their lay opinions as to the defendants' motive.

WHEREFORE, the motion in limine should be granted.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: _____
Joseph A. Jordano  (ct 21487)
Assistant Attorney General
55 Elm Street, P. O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
email: Joseph.Jordano@po.state.ct.us

**CERTIFICATION**

The undersigned hereby certifies that on the 15th day of July, 2005, a true and accurate copy of the foregoing, Defendants' Memorandum in Support of Their Motion in Limine, was sent by United States mail, first class postage prepaid, to the following:

Lowell L. Peterson, Esq.
Community Law Practice, LLC
2065-A Main Street
Hartford, CT  06120
Tel.: 728-3788
Fax: 728-3755

                                                   _____
                                                   Joseph A. Jordano
                                                   Assistant Attorney General