UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRENDA LEWIS, | : | CASE NO. 3:02CV2304(MRK) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF CORRECTION, ET AL. | : | |
| *Defendants* | : | AUGUST 8, 2005 |

## DEFENDANTS' REPLY TO PLAINTIFF'S MOTION IN LIMINE

### INTRODUCTION

Plaintiff's motion in limine illustrates the very point expressed by the defendants about how easily this case can deviate from the central legal issue through tangential issues that are not before the court if the plaintiff is permitted to solicit speculative opinion testimony from witnesses such as Smith, Denby, Gonzales, Harris, Goodison, Porter, Garcia, Evans and Eady about defendant Sousa's discriminatory motivation towards them personally. Not only is such evidence unsubstantiated and quite possibly contrived, but the defendants will be forced to defend against this evidence from these witnesses.[1] Ironically, this same argument is the very one advanced by plaintiff's counsel when he states at page 4 of his memorandum: "To create the illusion of improper motivation on the part of

---

[1] This case is schedules for 2-3 week trial largely because of the plaintiff's theory and attempt to litigate various acts allegedly suffered by other DOC employees such as Goodison, Smith, Denby, Gonzales, Porter, et al.

plaintiff without an iota of evidence that she behaved improperly by reporting false allegations against Sousa unduly prejudices her case . . ." The defendants submit that evidence showing that black union stewards and DOC employees encouraged the plaintiff and themselves acted with a racial bias towards Sousa is central to a case by the plaintiff that is built entirely upon the testimony of witnesses who did not **observe a single fact** relating to alleged incidents between Brenda Lewis and Lt. Sousa.[2]

The defendants believe that no evidence of other alleged acts of discrimination based on unsubstantiated opinion, speculation or bias should be offered into evidence. But if the court permits the plaintiff to solicit such evidence, then the credibility and motivation of the plaintiff, the black union stewards and the other DOC employees becomes relevant to the case.

Plaintiff's case continues to obscure and circumvent the prima facie elements of a hostile work environment claim, which is the only claim remaining before the court after the summary judgment.[3] The plaintiff advances two specious arguments. First, other the testimony of several black union stewards and DOC employees reflects the notion "I complained and therefore I was . . ." racially harassed  The plaintiff witnesses (the black union stewards and friends of the plaintiff) attempt to turn unsubstantiated opinion and speculation about Lt. Sousa's motive into fact based solely upon their own allegations. None of the

---

[2]  March 9, 2001, June 20, 2001, April 22, 2002, July 24, 2002, and August 13, 2002.

[3]  After the court granted summary judgment on several claims the plaintiff amended her complaint to allege many facts and a theory that was not originally pled before the court and to which the defendant did not have the opportunity to submit for summary judgment. The defendants have objected to the most recent Fifth Amended Complaint.

other alleged acts of discrimination by Smith, Denby, Gonzales, Harris, Goodison, Porter, Garcia, Evans and Eady, most of which make no reference to race discrimination, have been substantiated through an investigation by the DOC or CHRO.

Second, although Brenda Lewis never suffered any direct racial comments, ridicule or intimidation of any type as required under Title VII for a racially hostile work environment, since her friends allegedly <u>complained about harassment</u>, that necessitates the metaphysical leap that she must have also suffered from a racially hostile environment. Such logic is not supported by the law of Title VII.

## C/O PITRUZZELLO

Plaintiff objects to the testimony of Correction Officer Salvatore Pitruzzello. Contrary to the plaintiff's assertion, no affirmative defense is necessary to make Officer Pitruzzello's testimony relevant if the plaintiff attempts to offer testimony of witnesses Smith, Denby, Gonzales, Goodison, Porter and Eady. C/O Pitruzzello will not offer hearsay testimony. Pitruzzello will testify to his own experiences and treatment by these witnesses when he served as a C/O and union steward at the HCC. His personal knowledge based the observation of conduct at the HCC by black union stewards to get rid of white employees who they disliked goes to heart of the plaintiff's case that officer Sousa was racially motivated based on the proposed testimony of black union stewards or DOC employees. Defendants remind the court that for proposed witnesses Smith, Evans, Denby, Porter and Gonzales, et al, all the plaintiff states in her pretrial

3

memorandum is that these witnesses will "testify regarding his/her experiences with respect to discriminatory or abusive conduct on the part of Lt. Sousa." Nowhere will the plaintiff offer any direct evidence that the plaintiff suffered racially motivated conduct.

Regarding the plaintiff's claim that any comments by C/O Pitruzzello are hearsay, ANY comments by the plaintiff recounted by Pitruzzello are not hearsay by definition under Rule 801(d) as statements of a party opponent. Anything Brenda Lewis said is admissible as non hearsay.

The statements of witnesses Smith, Denby, Gonzales, Harris, Goodison, Porter, Garcia, Evans and Eady are not hearsay if they reflect these declarant's state of mind at the time they were uttered. See Rule 803(3). If C/O Pitruzzello testifies to comments made by these witnesses about their intent to target white C/O's they disliked, that would go directly to the witnesses' state of mind and would be admissible. See KW Plastics v. United States Can, Co., 130 F. Supp. 2d 1297, 1299 (M.D. Ala 2001); Freddie Fuddruckers, Inc. v. Ridgeline, Inc., 589 F. Supp. 72 (D.C. Tex. 1984). This is even more pertinent since these witnesses may be permitted to opine testimony about Lt. Sousa's motivation.

**C/O PATTERSON**

This witness' testimony is pertinent because it directly refutes the plaintiff's claim that Sousa falsely reported an assault by her. C/O Patterson reported that he was assaulted by Lewis while at work. This evidence shows a pattern of plan that is permitted evidence of prior bad acts under 404(b). It also

4

goes to show the plaintiff's attitude towards co-workers with whom she dislikes or disagrees and her credibility.

Again, if the plaintiff can offer evidence about officer Sousa's character through the unfounded testimony of witnesses Smith, Denby, Gonzales, Harris, Goodison, Porter, Garcia, Evans and Eady, how then is Officer Patterson's testimony about his experience with the plaintiff improper character evidence? If inferences are to be drawn from DOC employee's interaction with Lt. Sousa as to a racial bias, then C/O Patterson can certainly testify to his experiences with Brenda Lewis that bears on her credibility and behavior as a DOC employee.

**WITNESSES KEARNEY, GRANT and SMITH**

Although not specifically briefed by the plaintiff in her memorandum, in support of her motion in limine, these witnesses intend to testify to their interactions and observations of Lt. Sousa's conduct at HCC. This is pertinent to the claim by the plaintiff and her witnesses that Lt. Sousa was racially motivated based solely upon the speculative testimony of witnesses Smith, Denby, Gonzales, Harris, Goodison, Porter, Garcia, Evans and Eady.  Witnesses Kearney, Grant and Smith will testify to their observations of Lt. Sousa toward black and white C/O's in a fair non-racial manner. Again, if inferences can be drawn solely from the unsubstantiated testimony of plaintiff's witnesses, contrary evidence showing non-racially motivated conduct is pertinent.

**OTHER MATTERS**

It is important to discuss a legal fallacy that appears in the plaintiff's memorandum. Plaintiff continues to advance an argument that the testimony of

5

witnesses Smith, Denby, Gonzales, Harris, Goodison, Porter, Garcia, Evans and Eady can be admitted to show that defendant DOC was aware of complaints about discrimination that were not investigated. However, even if this was true about the lack of an investigation, which the defendant DOC denies, from that the law does NOT infer that Lt. Sousa was racially motivated or that the plaintiff suffered a racially hostile work environment.

Focusing on the phrase "employment practice" appearing in Title VII as applied to a hostile work environment, in National Railroad Passenger Corp. v. Abner-Morgan, 536 U.S. 101 (2002), the Supreme Court described the different nature of hostile work environment claim versus a disparate treatment premised upon discrete acts. The Court noted that a hostile work environment claim requires a workplace "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victims employment." Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993).

In the present case, the plaintiff seeks to intertwine alleged acts of disparate treatment to other employees with her hostile work environment claim. This is troubling and unfairly prejudicial to the defendants because the "other acts" do not concern a hostile work environment and are not proven acts of discrimination. Unlike evidence of racial comments, jokes or comments that can be presented as facts, the speculative opinions of these witnesses about Lt. Sousa's motivation lack foundation and is unfairly prejudicial. Essentially what the plaintiff wants to do throw every opined discriminatory act she can conjure up by her friends in hope that something will taint the defendants.

In the case of <u>Gant v. United States Postal Service</u>, 2001 U.S. Dist. LEXIS 16274 (W.D.MI 2001), the plaintiff alleged that his employer subjected him to a racially hostile work environment. To support his claim he sought to offer evidence of two racial comments directed toward him personally and two comment made by his supervisor toward other employees. Ruling on the defendant's summary judgment, the district court stated that the appropriate inquiry was only on those comments directed at the plaintiff. <u>Id.</u> at *8. This reasoning makes sense because a prima facie element of a racially hostile environment is for the plaintiff to show THAT SHE was subjected to racially hostile conduct. The plaintiff in this case continues to premise her entire case upon allegations of harassment by other black workers. The tenuous causal nexus between allegations and fact is so weak any inference from such unsubstantiated allegations can only unfairly prejudice the defendants.

## **CONCLUSION**

The admissibility of testimony Pitruzzello, Patterson, Kearney, Smith and Grant will depend in part of what evidence the plaintiff is permitted to offer in her case in chief. All of these witnesses can testify to there personal observation and comments made by the plaintiff herself. Testimony by Pitruzzello about comments and conduct by black union stewards targeting white C/O's is central to refute the basis of the plaintiff case because she herself will have no direct or circumstantial evidence of racially motivated conduct. C/O Patterson's testimony about the plaintiff's assault of him shows both a pattern and the plaintiff's plan to intimidate fellow co-workers with whom she disagreed or disliked.

        DEFENDANTS,

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

BY: _____
        Joseph A. Jordano
        Assistant Attorney General
        Federal Bar # ct21487
        55 Elm Street, P.O. Box 120
        Hartford, CT 06141-0120
        Tel: 860-808-5340
        Fax: 860-808-5383
        email: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the 8th day of August, 2005, a true and accurate copy of the foregoing was sent by United States mail, first class postage prepaid, to the following:

Lowell Peterson, Esq.
Community Law Practice, LLC
2065-A Main Street
Hartford, CT 06120

        _____
        Joseph A. Jordano
        Assistant Attorney General