UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRENDA LEWIS, | : | CIVIL NO. 3:02CV2304 (MRK) |
| *Plaintiff,* | : | |
| | : | |
| STATE OF CONNECTICUT, | | |
| DEPARTMENT OF CORRECTION, | | |
| ET AL., | : | |
| *Defendants.* | : | August 26, 2005 |

**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S
JURY INSTRUCTIONS AND VERDICT FORMS**

The defendants object to the following jury instructions proposed by the plaintiff.

Page 10 of Plaintiff's Jury Instructions:  Plaintiff's sentence reads "Although this claim is brought solely against the individual defendant Sousa, and requires a showing of his "personal involvement," there may be instances where an employer may be liable for damages as an indemnifier of the employee."  Defendants object because the 42 U.S.C. § 1981 claim is brought solely against Lt. Sousa in his individual capacity; there is no claim against the employer DOC.  Furthermore, application of the state indemnification statutes is not part of the jury's role.  Therefore, the last clause following "personal involvement" is not applicable and will confuse and prejudice the jury by suggesting the possibility of employer liability.  The Defendants request that the court use their jury instructions relating to the 42 U.S.C, sec. 1983 requirement of "personal involvement" found on pp. 15 and 16.  However, if the court declines to do so, the defendants request that the plaintiff's sentence be modified by dropping the first word and last clause to read:  "This claim is brought solely against the individual defendant Lt. Sousa, and requires a showing of his "personal involvement."

Page 11 of Plaintiff's Jury Instructions re Hostile Work Environment: Defendants object to Plaintiff's paragraph (1) in that it speaks to "conduct of a harassing nature" and does not include the necessary adjective "racially" before "harassing nature." Title VII is not a civility code and harassment that is not racial in nature is not sufficient to invoke the protections of Title VII. Oncale v. Sundowner Offshore Services, 523 U.S. 75, 80 (1998) ("Title VII is not a 'general civility code.'"); Faragher v City of Boca Raton, 524 U.S. 775, 788 (1998); Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (mistreatment at work…is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic."); Bickerstaff v. Vasser College, 196 F.3d 435, 452 (2d Cir. 1999); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 n. 2 (5th Cir. 1996) ("Title VII does not protect employees from hostile conduct that is not based on their protected status.") citing See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

The Defendants also object to plaintiff's reliance on Alfano v. Costello, 294 F.3d 365 (2d Cir. 2002) on p. 11 of her jury instructions for the proposition that a hostile work environment can be supported solely by facially race-neutral incidents if the totality of the circumstances establish an inference of such race-based bias. A closer reading of Alfano indicates that the court was simply recognizing that where there is some overtly racial remark or incident, other facially neutral remarks or incidents could be used to establish a course of discrimination.

> Although we conclude ultimately that Alfano failed to demonstrate a sex-based hostile work environment, we reject (as the district court rejected) the argument that such a claim can be supported only by overtly sexual incidents. There is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of

> multiple acts of harassment, <u>some overtly sexual and some not</u>.  See e.g, <u>Raniola v. Bratton</u>, 243 F.3d 610, 622-23 (2d Cir 2001); <u>Howley,</u> 217 F.3d at 155-56.

294 F. at 375 Emphasis added.

> Keeping these considerations in mind, we see that the majority of incidents cited by Alfano are sex-neutral on their face.  Facially neutral incidents may be included, of course, among the "totality of the circustances" that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.  But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.  Compare <u>Howley</u>, 217 F.3d at 155-56 (holding that factfinder could reasonably infer that facially sex-neutral incidents were sex-based where the perpetrator had previously made sexually derogatory statements), and <u>Williams v. Gen. Motors Corp</u>., 187 F.3d 553, 560-64 (6th Cir. 1999) (where plaintiff was ostracized on multiple occasions, the use of sex-specific slurs in some incidents justified the inference that all of the incidents were sex-based, allowing the facially neutral incidents to be considered in hostile work environment analysis), with <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 464 (6th Cir. 2000) (objectionable but facially sex neutral behavior by one person could not be considered in hostile work environment claim where there was no evidence of that person's bias).

<u>Id</u>. at 377-78.

To the extent plaintiff puts forward absolutely no evidence of a racially charged statement or incident by Lt. Sousa, there is no basis to include a jury instruction permitting the jury to draw an inference of racial discrimination from solely race-neutral incidents.  Furthermore, unsubstantiated claims of others unrelated to the plaintiff and her work environment cannot establish admissible evidence of racial discrimination in this case, and therefore, should not be considered.  <u>See</u> <u>e</u>.<u>g</u>., <u>Hester v. Bic Corp</u>., 225 F.3d 178 (2d Cir. 2000) (jury award vacated because coworkers' testimony that a supervisor's treatment of employee was race-based was naked speculation, not admissible lay testimony).

The necessity of including "racially harassing" language instead of simply "harassing" is supported by the standard articulated in Harris v. Forklift Systems, 510 U.S. 17, 21-22 (1993), which includes "discriminatory" as describing the conduct analyzed. For example, "*discriminatory* conduct was so severe or pervasive," and circumstances may include "the frequency of the *discriminatory* conduct: *its* severity; whether *it* is physically threatening or humiliating, or a mere offensive utterance; and whether *it* unreasonably interferes with an employee's work performance." (Emphasis added.) "Discriminatory" necessarily includes unlawful action based on the protected status, in contrast to merely "harassing" action. Likewise, "*discriminatory* intimidation, ridicule, and insult" is spoken of in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) and Patterson v. County of Oneida, New York, 375 F.3d 206, 227 (2d Cir. 2004) (emphasis added.). Accord, Farpella, 97 F.3d at 806 (4 of the 5 elements that a plaintiff was required to show in support of a sexually hostile work environment claim included involving "sexual" harassment or conduct based upon sex.

Defendants further object to the same sort of omission of the word "racially" on the following pages:

The plaintiff miscites to Meritor, on p. 12 of her jury instructions when she leaves out the word "sexual" from her first sentence defining a hostile workplace. The plaintiff states: "…a workplace is considered hostile when the harassment was sufficiently severe or pervasive as to alter the conditions…." The language from Meritor reads "For *sexual* harassment to be actionable, *it* must be sufficiently severe or pervasive .…" (Emphasis added.) The "it" clearly refers back to "sexual harassment" and not simply any harassment. On p. 13 of plaintiff's jury instructions and p. 10 mid-page of Defendants'

4

instructions, third line down, the word "racially" should be inserted to read: "The more severe the '*racially*' harassing conduct, the less frequent it must be for you to find…." On p. 15 of plaintiff's jury instructions, fifth line down, again the word "racially" should be inserted at the end of the line.

Page 11, 13-14 of Plaintiff's Jury Instructions: Plaintiff uses the language in par. (2) on p. 11, that "race was a motivating factor in subjecting her to this conduct." Defendants have not seen the phrase "motivating factor" used outside the context of the disparate treatment analysis and does not find it in the cases cited by plaintiff. The defendants are unsure whether plaintiff is equating that language with "a plaintiff must demonstrate that the conduct occurred because of her [protected status classification, i.e. sex or race]." Alfano, 294 F.3d at 374, citing Brown v. Henderson, 257 F.3d 246 (2d Cir. 2001). The Defendants think it is better to rely on language found in hostile work environment cases.

Page 14, 15 of Plaintiff's Jury Instructions: Defendants object to the sole instruction that defendant Sousa was a supervisor. The Defendants object to the omission of any jury instruction in the event the court determines that Lt. Sousa is merely a co-worker and not a supervisor. In addition, defendants object to the inclusion of the phrase "adverse change of work assignment" as the parties have stipulated that there has been no adverse employment action in this case and this may confuse the jury with regard to the recuperative post assignment without further defining what is meant by an adverse change of work assignment.

The Defendants object to the second full paragraph <u>on p. 15, mid-page, of Plaintiff's Jury Instructions</u>, in that there is no cite to support the plaintiff's requirement of a uniformly enforced policy or the supposition that it would be reasonable for the plaintiff not to follow a non-uniformly enforced one. In addition, a plaintiff's fears that her claims would not be taken seriously are insufficient to overcome an employer's burden under the second element of the defense. <u>Caridad v. Metro North Commuter Railroad</u>, 191 F.3d 283, 295 (2d Cir. 1999) citing <u>Faragher</u>, 524 U.S. at 807. An employee experiencing discrimination has a duty to use an employer's preventive or remedial mechanism for reporting and resolving discrimination complaints to avoid or minimize the damages that result from violation of the statute. <u>Faragher</u>, 524 U.S. at 807. In addition, until there is evidence of non-uniform application and enforcement, this jury instruction is improper and irrelevant.

<u>On p. 16 of Plaintiff's Jury Instructions</u>, the Defendants object to the inclusion of damages for future losses as the plaintiff has not worked with Lt. Sousa in several years.

<u>Defendants object to Plaintiff's jury instruction on p. 20</u> because it erroneously relies on <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981) for the inclusion of recklessness as an element in the § 1981 a cause of action. <u>Parratt</u> involved solely a constitutional issue, not before this court, and specifically recognized that § 1983 did not contain an express requirement of a particular state of mind,, and that one was to look to the particular statute involved and to the nature of the particular constitutional violation involved. 451 U.S. at 534-5. There is no mention of recklessness in cases that set forth the "intentional" standard for establishing liability. E.g., <u>Pavon v. Swift Transportation</u>, 192 F.3d 902, 908 (9th Cir. 1999) ("[t]o establish a claim under sec. 1981 the plaintiff must prove that he or

6

she was subjected to intentional discrimination based upon his or her race….."); Juarez v. ACS Government Solutions Group, 314 F.3d 1243, 1246 (10th Cir 2003).. Malice or reckless indifference to federally protected rights is a consideration only with regard to awarding punitive damages. Smith v. Wade, 461 U.S. 30, 56 (1983); Juarez, 314 F.3d at 1247. And in regard to awarding punitive damages the standard is that there must be a perceived risk that the person's actions will violate federal law. Juarez, 314 F.3d at 442, citing Kolstad, 119 S. Ct. at 2124.

On p. 22 of Plaintiff's Jury Instructions, the Defendants again object to the state of mind requirement as defined to include "recklessly" for the same reasons as stated in the above paragraph. In addition, *a fortiorari*, the Defendants object to the state of mind requirement as defined to include "negligence." Negligent performance does not constitute liability under 42 US.C. § 1981. (The cases cited by plaintiff hold that in the context of a Due Process claim, negligence cannot establish liability.)

On p. 24 and 26 of Plaintiff's Jury Instructions, the Defendants again object to the inclusion of "reckless disregard" and "recklessly."

On pp. 16 and 27 of Plaintiff's Jury Instructions, the Defendants object to the inclusion of nominal damages as nothing in the Title VII or 42 U.S.C. § 1981 or § 1981a requires the awarding of nominal damages. (More research is being undertaken). It is Defendants' understanding that nominal damages are permitted under § 1983 in regard to constitutional violations, not relevant here. Carey v. Piphus, 435 U.S. 247 (1978). Furthermore, Defendants object to the Plaintiff's use of the word "careless indifference" when the standard for punitive damages rests on "malice or reckless indifference." Cush-Crawford v. Adchem Corp., 271 F.3d 352 (2d Cir. 2001).

The Defendants request the right to modify the proposed jury instructions prior to the jury charge conference and as needed to comport with the evidence once taken.

**DEFENDANTS' OBJECTION TO PLAINTIFF'S VERDICT FORM**

The Defendants object to plaintiff's jury verdict form regarding both DOC and Eric Sousa in its present form because it is confusing and misleading for the jury and because it includes misstatements of law.  Many, but not all of the interrogatories repeat the deficiencies pointed out in Defendants' Objections to Plaintiff's Jury Instruction, (eg. no mention of racial harassment or racially hostile work environment in interrogatories 1 or 2) while others add new misstatements (eg. no mention of objective standard, mentions wrong punitive standard of egregiousness).  In other cases, they omit questions such as whether plaintiff has suffered and proved damages.  In addition, jury interrogatories should not contain prima facie discrimination questions as that is only a burden shifting tool and poses a significant risk to confuse the jury.  Sharkey v. Lasmo, 214 F.3d 371 (2d Cir.200) (in context of McDonnell Douglas prima facie elements); Sanghvi v. City of Claremont, 328 F.3d 532 (9th Cir. 2003).  To that end, the Defendants intend to simplify their verdict form even more and ask that the plaintiff do so as well.

8

DEFENDANTS.
DEPARTMENT OF ORRECTION,
ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


By:_____
Beth Z. Margulies
Assistant Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel:  (860) 808-5340
Fax. (860) 808-5383
Federal Bar No. ct08469
Email:  Beth.Margulies@po.state.ct.us


## **CERTIFICATION**

I hereby certify that a copy of the foregoing Defendants' Objection  to Plaintiff's Jury Instructions was mailed, United States mail first class, postage prepaid, this 26th day of  August, 2005, to the following:

Lowell L. Peterson, Esq.
Community Law Practice, LLC
2065-A Main Street
Hartford, CT  06120
Tel.: (860) 728-3788
Fax: (860) 728-3755

_____
Beth Z. Margulies
Assistant Attorney General

9