**UNITED STATES DISTRICT COURT**

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BRENDA J. LEWIS,** | : | **CIVIL ACTION CASE NO.** |
|     *Plaintiff*, | : | |
| v. | : | 302 CV 2304 (MRK) |
| **STATE OF CONNECTICUT,** | : | |
| **DEPARTMENT OF CORRECTION** | : | |
| *et al.*, | : | |
|     *Defendants* | : | **SEPTEMBER 6, 2005** |

**PLAINTIFF'S FIRST TRIAL BRIEF REGARDING QUESTIONS OF LAW**

    In connection with outstanding issues of law in the captioned matter, Plaintiff offers the following memoranda. Plaintiff does not regard this proffer as inclusive of all issues and reserves the right to prepare further briefs as necessitated by the proceedings or directed by the Court.

Whether Defendant Sousa's relationship to Plaintiff was that of her "supervisor" for purposes of imputing vicarious liability to her employer, Defendant DOC, under principles applicable to Title VII is a question for the jury or the Court.

    The parties are in agreement that the threshold question regarding whether the discriminatory conduct of Defendant Sousa, if otherwise proved, may be imputed to the mutual employer of Plaintiff and Defendant Sousa is whether Defendant occupied the status of "supervisor." (Although much of the language referring to the finding of supervisory capacity in Title VII cases is cited in connection with sexual, rather than racial, harassment, the parties agree that the same standard applies for purposes of evoking the *Ellerth/Faragher* affirmative defense.)

> [T]he plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer. "Where an employee is the victim of …harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."

>*Petrosino v. Bell Atlantic*, 385 F.3d 210, 255 (2d Cir. 2004).  According to … *Ellerth* and *Faragher*, this inquiry differs where the harassment is attributed not to non-supervisory co-workers but to a supervisor with immediate or successively higher authority over the employee. … In that circumstance, "a court looks first to whether the supervisor's behavior 'culminated[d] in a tangible employment action' against the employee." … If it did, "the employer will, *ipso facto*, be vicariously liable." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 124 (2d Cir. 2003).  If no such tangible employment action is present, however, an employee will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense. … That defense requires the employer to show that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Fairbrother v. Morrison*, No. 03-9242 (2d Cir., June 14, 2005), *citing Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998).

The parties agree that the definitive decision in the Second Circuit for the supervisory employee analysis is *Mack v. Otis Elevator Co.*, 326 F.3d 116 (2d Cir. 2003).

>The starting point for analyzing employer vicarious liability in a Title VII hostile work environment action is to determine whether the person who allegedly created that environment is properly characterized as having been the plaintiff's "supervisor."  … The *Ellerth* Court acknowledged that harassment by one employee of another is not ordinarily an act within the harasser's scope of employment and that the employer is therefore not ordinarily vicariously liable for the creation of a hostile work environment on that basis. … But …an employer may be held liable for the actions of an employee even when they are outside the scope of employment … if the employee was "aided in accomplishing the tort by the existence of the agency relation." Restatement [(Second) of Agency (1957)], § 219(2)(d). …

*Mack*, 326 F.3d at 123.

It is not disputed that the significance of the supervisory distinction in the present case is that it will determine whether Defendants may invoke the *Ellerth/Faragher* affirmative defense. That is, the parties have stipulated that Plaintiff was subject to no "tangible employment action," such as termination, suspension or demotion.  In the event that a defendant is a supervisory and there was tangible employment action, the cases are unanimous in holding that employer liability

is "automatic" or irrebuttably presumed. In the same way, if Sousa is determined to have been merely a co-worker, then Defendant DOC is presumed not liable unless Plaintiff can meet the burden of showing that DOC knew or had reason to know of Sousa's conduct and failed to take remedial action. The disputed question is whether, in fact, Sousa was Plaintiff's supervisor.

Initially, the parties agreed that the determination of that question should rest with the Court (as evidenced by their submissions of jury instructions and verdict forms).

As directed by the Court, however, the parties have more closely examined this issue and, in light of the weight of authority, Plaintiff states herein her position that the question actually requires a two-part analysis: (1) It will first be a question of law to be decided by the Court, and for the Court to instruct the jury accordingly, as to the appropriate legal definition of what it means for *any* defendant to be a "supervisor" for the purpose of imputing liability to the employer under Title VII; and (2) It will then be the function of the jury to decide those questions of fact that determine whether the working relationship of the specific defendant, in this case Sousa, to the Plaintiff conforms to that legal definition.

As to the first question, the question of law: Plaintiff's position is that the finding that a particular defendant may be classified as a "supervisor" requires "something more" than mere evidence of an employer/employee relationship and "something more" than mere evidence that, in some instances, the allegedly harassing employee acted as an agent for the employer.

> [I]n a sense and to an extent, all workplace harassers are aided in their misbehavior by the agency relationship with their employer, because "[p]roximity and regular contact may afford a captive pool of potential victims." … It does not follow, however, that employers are vicariously liable for all workplace harassment. "Something more than the employment relation itself" must be established before the employer will be saddled with liability for the employee's misbehavior.

*Mack,* 326 F.3d at 124, *citing Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758 (1998).

3

However, *Mack* also establishes that, at least with respect to the Second Circuit, the definition may be satisfied by something *less* than a finding that the arguably supervisory employee had the authority to impose tangible employee actions on the plaintiff.  Defendants in the instant case are expected to argue that the parties' joint stipulations of fact at paragraphs 58 – 60, reflecting that Sousa lacked the authority to hire, fire, promote or discipline Lewis is determinative, in the negative, of whether he was her supervisor.  This position is consistent with the holding in the *Parkins* decision that was expressly rejected by the Second Circuit in *Mack*.

> According to *Parkins*, it is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment.  This authority primarily consists of the power to hire, fire, demote, promote, transfer or discipline an employee.  Absent an entrustment of at least some of this authority an employee does not qualify as a supervisor for purposes [of] imputing liability to the employer. … It is undisputed that the [harassing employee in *Mack*] had no such authority with respect to Mack.  The district court therefore concluded that [the defendant] was not Mack's supervisor and that [the employer] therefore could not be held vicariously liable for [defendant's] misbehavior, if any.
>
> We disagree.  The *Parkins* test for determining who is a supervisor focuses on those attributes of an employee that enable him or her to take tangible employment actions with respect to subordinates: "the power to hire, fire, demote, promote, transfer or discipline an[other] employee."  … But, as we have seen, *Ellerth* and *Faragher* hold that an employer may be vicariously liable even for the misbehavior of employees who do not take tangible employment actions against their subordinate victims.  The question in such cases is not whether the employer gave the employee the authority to make economic decision concerning his or her subordinates.  It is instead, whether the authority given by the employer to the [harassing] employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates.  We therefore conclude that the authority that renders a person a supervisor for purposes of Title VII analysis is broader than that reflected in the *Parkins* test.

*Mack*, 326 F.3d at 126, *citing Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027 (7th Cir. 1998).  (It is interesting to note, in contrast to the rule in the Second Circuit, the discussion in *Browne v. Signal Mountain Nursery, L.P.*, No. 1:01cv351 (E.D. Tenn. 2003) emphasizing the apparently unresolved dispute among the circuits.  The Seventh Circuit, home

4

of *Parkins*, and the Tennessee Eastern District take the position that supervisory authority is at all times defined by the indicia of power to hire, fire, promote, demote, transfer or discipline and invocation of the *Ellerth/Faragher* affirmative defense turns only upon whether that power was *exercised*. That is not the rule in the Second Circuit, and therefore not the rule in the present case.)

  The *Mack* requirement, giving persuasive weight to the definition of "supervisor" endorsed by the Equal Employment Opportunity Commission, looks to either of two factors to determine "whether the authority given by the employer to the [harassing] employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates," that is, whether: "(a) the individual has authority to undertake *or* recommend tangible employment decisions affecting the employee; *or* (b) [t]he has authority to direct the employee's daily work activities." *Mack*, 326 F.3d at 127, *citing EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors*, 8 FEP Manual (BNA) 405: 7654 (1999), *emphasis in original.*

  Plaintiff urges the Court that the above analysis establishes the scope of the question of law that falls within the purview of the Court to instruct the jury.

  The second question, then, goes to the weight of the factual evidence that must be presented to the jury in order to assist the jurors in establishing whether the relationship of the particular defendant, Sousa, to Plaintiff included facts and circumstances from which they can adduce that, in accordance with the instruction of law they are given, he was Plaintiff's supervisor for the purpose of imputing liability to the Defendant DOC for his conduct. In that respect, there remain, at least, the following unanswered questions of fact: During the period between Sousa's assignment to the Hartford facility on May 21, 1999, and Plaintiff's transfer

from that facility on November 29, 2002 (or, more narrowly, during the period between March 9, 2001 and August 13, 2002 [the first and last dates of the incidents that Plaintiff alleges constituted harassing conduct]), did Lt. Sousa possess the authority to direct Plaintiff's daily work activities to such a degree that she would reasonably believe herself compelled to comply with his directions; how regularly were they on the same shift; to what extent, if any, did he have the authority to direct her to report incidents; to what extent, if any, did he have the authority, as stated by Hartford Post Order 6.2.44 ¶ 11, to "[I]nvestigate and initiate reports regarding improper job performance by staff members and make recommendations to the Shift Commander;" to what extent, if any, did those recommendations include disciplinary action based on such reports; was Plaintiff "under [the] command" of Defendant Sousa as contemplated by Hartford Post Order 6.2.44, ¶ 3, mandating that "Each Lieutenant shall provide direct supervision of all Correctional Officers under their command …"?.

The authorities cited above stand for the proposition that the jury's answers to these, and perhaps additional, inquiries will enable them to apply the law, as instructed, to the facts of this case.

**In connection with the foregoing argument, Plaintiff also submits herewith her amended jury instructions and verdict form to conform hereto.**

<u>Whether conduct that is facially neutral with respect to race may nevertheless be used to substantiate a claim of racially hostile work environment, provided that other circumstantial evidence is presented sufficient for a reasonable juror to conclude that the defendant's conduct was based on race.</u>

This question has been raised previously and discussed extensively by the parties in connection with their respective statement of the elements of a hostile work environment claim, including in particular the Defendants' argument that the first element requires a showing of

conduct that is specifically "racial" in nature. For this proposition, the Defendants rely, in substantial part, on the authority of *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002).

Without extensively recovering ground that has previously been briefed, Plaintiffs urge the court that *Alfano* cannot be relied upon definitively for the position that explicitly race-[or sex-]based conduct is the *sine qua non* for a hostile work environment claim. What *Alfano* provides, if read carefully, is that conduct which is sex-neutral may be relied upon to establish sexual harassment in the context where such conduct was in addition to other conduct that was sex-specific. *Alfano* does not specifically address the question whether harassment could be found in the case where none of the conduct is alleged to include sexually or racially derogatory language or other unequivocal indicators of racial animus. Although *Alfano* specifically refers to sex-specific conduct as one example of the "totality of the circumstances," necessary to demonstrate that conduct was discriminatory, it does not say an "indispensable" example.

<u>Whether a finding of reckless indifference to the federally protected rights of the Plaintiff can satisfy the intent requirement of a §1981/1983 action.</u>

In their Objections to Plaintiff's Jury Instructions dated August 26, 2005, Defendants have argued that the intentional discrimination requirement for a § 1981 action may not be satisfied by a showing of reckless indifference to the federally protected rights of the Plaintiff. However, cases in the Second Circuit do not support as drawn so precisely or severely the distinction between an action under § 1983 and one under § 1981, where § 1983 is relied on as the enforcement mechanism for the claim that rights created by § 1981 were violated. *See, e.g., Olivier V. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190 *(2nd Cir.* 2005); *Ehrlich V. Town Of Glastonbury*, 348 F.3d 48, 52 (2nd Cir. 2003); *Disorbo V. Hoy*, 343 F.3d 172, 186 (2nd Cir. 2003); *Hernandez V. Keane*, 341 F.3d 137, 147 (2nd Cir. 2003); *Hawkins V. 1115 Legal*

*Service Care,* 163 F.3d 684, 690 (2nd Cir. 1998); *Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997); *Ricketts V. City Of Hartford*, 74 F.3d 1397, 1412 (2nd Cir. 1996).

Respectfully Submitted,

        PLAINTIFF,
        BRENDA LEWIS

By: _____
     Lowell L. Peterson, Esq.
     Community Law Practice, LLC
     Federal Bar ID # ct-22165
     2065-A Main Street
     Hartford, CT  06120
     Tel.: 728-3788
     Fax: 728-3755
     E-mail:  lpeterson@clpllc.com

## **CERTIFICATION**

      I certify that a copy of the foregoing Plaintiff's First Trial Brief Regarding Questions Of Law was delivered by hand in open court to counsel of record for all Defendants on September 6, 2005.

                                                      _____
Lowell L. Peterson, Esq.
Community Law Practice, LLC
Federal Bar ID # ct-22165
2065-A Main Street
Hartford, CT 06120
Tel.: 728-3788
Fax: 728-3755
E-mail: lpeterson@clpllc.com